980 So.2d 167 (2008)
David MELIUS and BCI Properties, L.L.C.
v.
David KEIFFER, Thomas Milliner and Maple Area Residents, Inc.
No. 2007-CA-0189.
Court of Appeal of Louisiana, Fourth Circuit.
March 12, 2008.
Rehearing Denied April 9, 2008.
*169 Kyle Schonekas, Thomas M. McEachin, Schonekas, Winsberg, Evans & McGoey, L.L.C., New Orleans, LA, for David Melius and BCI Properties, L.L.C.
*170 Alicia M. Bendana, Lowe, Stein, Hoffman, Allweiss & Hauver, L.L.P., James R. Logan, Logan & Soileau, L.L.C., J. Keith Hardie, Jr., New Orleans, LA, for David Keiffer, Thomas Milliner, and Maple Area Residents, Inc.
(Court composed of Judge DENNIS R. BAGNERIS, SR., Judge TERRI F. LOVE, Judge LEON A. CANNIZZARO, JR.).
TERRI F. LOVE, Judge.
This appeal arises from the trial court's granting of a special motion to strike pursuant to La. C.C.P. art. 971. For the reasons that follow, we find that the trial court did not err and affirm the granting of the motion to strike, as Mr. Melius and BCI failed to sustain their burdens of proof.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
David Melius ("Mr. Melius") and BCI Properties, L.L.C. ("BCI") owned and operated Bruno's bar on Maple Street. Mr. Melius sought to build a new and larger bar across the street from the original due to his landlord's failure to renew the lease. The Maple Area Residents, Inc. ("MARI") opposed the creation of a new and expanded Bruno's bar in their neighborhood. Prior to constructing the new bar, Mr. Melius sought to receive the approval of the building plans by the City Planning Commission ("CPC") and the City Council ("CC").
David Keiffer ("Mr. Keiffer") and Thomas Milliner ("Mr. Milliner") spoke out against the construction of the new bar as members of MARI. Mr. Milliner was also the president of MARI. Mr. Keiffer and Mr. Milliner expressed their opposition at CC meetings, on the MARI web site, in letters to public officials, and in an appeal to the Board of Zoning Adjustments ("BZA").
Mr. Melius and BCI filed a petition for damages against Mr. Keiffer, Mr. Milliner, and MARI, seeking damages for defamation, abuse of process, malicious prosecution, and the intentional infliction of emotional distress. Mr. Keiffer, Mr. Milliner, and MARI filed an exception of vagueness, but Mr. Melius and BCI filed a supplemental and amended petition to alleviate the non-specificity. Mr. Keiffer, Mr. Milliner, and MARI then filed a special motion to strike pursuant to La. C.C.P. art. 971, which prohibits strategic lawsuits against public participation ("SLAPP"). The trial court granted the motion, striking the petition with prejudice. Mr. Keiffer, Mr. Milliner, and MARI also filed a motion for attorney's fees and costs pursuant to La. C.C.P. art. 971(B). This devolutive appeal followed with the motion for attorney's fees and costs still pending.

STANDARD OF REVIEW
Appellate courts review special motions to strike with the de novo standard of review because it involves issues of law and examines whether the trial court was legally correct. Lamz v. Wells, 05-1497, p. 3 (La.App. 1 Cir. 6/9/06), 938 So.2d 792, 795; Aymond v. Dupree, 05-1248, p. 5 (La.App. 3 Cir. 4/12/06), 928 So.2d 721, 726.

STRATEGIC LAWSUIT AGAINST PUBLIC PARTICIPATION
The Louisiana legislature enacted La. C.C.P. art. 971 "to screen out meritless claims pursued to chill one's constitutional rights under the First Amendment of the United States Constitution to freedom of speech and press." Lee v. Pennington, 02-0381, p. 4 (La.App. 4 Cir. 10/16/02), 830 So.2d 1037, 1041. The Louisiana Code of Civil Procedure provides for a special motion *171 to strike SLAPP cases pursuant to La. C.C.P. art. 971(A)(1), which provides:
A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.
La. C.C.P. art. 971(A)(1).
The burden of proof begins with the party filing the motion to strike to prove that "the cause of action arises from an act in the exercise of his right of free speech regarding a public issue." Aymond, 05-1248, p. 7, 928 So.2d at 727. Once proven, the plaintiff must then demonstrate a probability of success on the claim. Id. In determining whether the plaintiff established a probability of success on his claims, the court will "consider the pleadings and supporting and opposing affidavits." La. C.C.P. art. 971(A)(2).

Free Speech Regarding a Public Issue
First, we must determine whether the remarks/comments at issue in the alleged insult made by the members of MARI regarding the proposed new Bruno's bar concerned a public issue. The area surrounding Bruno's bar is largely residential. However, bars, restaurants, and shops are also prevalent. Mr. Melius asserts that MARI "purports to represent the interests of the residents of the area on and around Maple Street in New Orleans." As the MARI web site pages in the record demonstrate, MARI watches proposed bar rule changes or expansions closely as it would affect the type of late night activity and congestion in the neighborhood.
The remarks/comments, which are at issue in the instant matter, were made by the members of MARI. This included statements on the MARI web site, statements made at public hearings regarding the design of the new bar and permits, and letters to political officials as shown in the record.
Mr. Melius alleges that Mr. Keiffer stated that the new bar would accommodate over 900 people. He also references a letter Mr. Milliner wrote to Mayor Nagin, in which Mr. Milliner stated that Bruno's had "not met the mandatory off-street parking provisions." Further, Mr. Melius avers that Mr. Keiffer made defamatory statements at a CPC hearing, which included:
1) that plaintiffs had not submitted a single, viable parking lease to the CPC for review;
2) that Mr. Melius had said to the City Council that he had secured 35 parking spaces;
3) that the new building would have to have 27 to 33 parking spaces;
4) that, under the proposed parking plan, handicapped persons would have to go into the street to avoid parked cars;
5) that there were six (6) other bars within two (2) blocks of the new building;
6) that the patron area requirement had not been met in the new building; and
7) that the new building was built not incompliance with the CZO.
Mr. Melius also asserts that Mr. Milliner made defamatory comments at the same CPC hearing, including:
1) that plaintiffs had agreed to build a one story bar if the parking requirement was reduced from 45 to 21 spaces;
2) that plaintiffs had betrayed MARI and the neighbors;

*172 3) that plaintiffs had offered a sham parking plan; and
4) that plaintiffs had promised to build a one story bar and were, in fact, building a two story bar.
As to MARI, Mr. Melius alleges the following allegedly defamatory statements were published on the web site:
1) that plaintiffs had received special treatment from the City;
2) that plaintiffs had made a "backroom deal" with City officials;
3) that plaintiffs had offered a sham parking plan;
4) that plaintiffs were building a second story on the new building;
5) that plaintiffs had broken various promises;
6) that approval of the administrative amendment would amount to a full waiver of the parking requirements;
7) that plaintiffs had concealed a purported second floor from the plans that were submitted to the City; and
8) that plaintiffs' building was built according to a different set of drawings than those submitted to the City.
Lastly, Mr. Melius contends that Mr. Milliner and Mr. Keiffer made statements similar to those listed above at the BZA hearing.
All of these statements fall under the purview of protected free speech. The Louisiana Code of Civil Procedure states that a special motion to strike pertains to "[a]ny written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official body authorized by law." La. C.C.P. art. 971(F)(1)(b). Given the above facts, we find that the statements at issue in the case sub judice constitute free speech regarding a public issue. Thus, we must determine if Mr. Melius demonstrated a probability of success on his claims.

Defamation
Prevailing on a claim for defamation requires the plaintiff to prove: "`(1) a false or defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury.'" Darden v. Smith, 03-1144, p. 8 (La.App. 3 Cir. 6/30/04), 879 So.2d 390, 397, quoting Trentecosta v. Beck, 96-2388, p. 10 (La.10/21/97), 703 So.2d 552, 559. If one element of defamation is lacking, the claim cannot prevail.
Mr. Melius avers that the statements made by Mr. Keiffer, Mr. Milliner, and MARI were defamatory. However, a conditional privilege is established when a statement is made in "good faith, on a matter in which he had an interest or duty, and to another person with a corresponding interest or duty." Davis v. Benton, 03-0851, p. 9 (La.App. 1 Cir. 2/23/04), 874 So.2d 185, 190. If reasonable grounds exist for believing a statement to be true, the statement is made in good faith. Id. Mr. Melius also asserts that the remarks made by Mr. Keiffer, Mr. Milliner, and MARI caused damage to his reputation and business. However, Mr. Melius' opposition to the motion to strike included Mr. and Mrs. Melius' affidavits and the petition. The affidavits use their personal beliefs and feelings to support their assertions that Mr. Milliner and Mr. Keiffer spoke in alleged bad faith. No additional evidence supporting Mr. Melius' claim was presented. These uncorroborated assertions are inadequate to support a claim of defamatory words or damages from the alleged defamation. See Estiverne v. Times-Picayune, L.L.C., 06-0571 (La.App. 4 Cir. 12/20/06), 950 So.2d 858; Hunt v. Town of New Llano, 05-1434 (La.App. 3 Cir. 5/3/06), 930 So.2d 251; Johnson v. KTBS, *173 Inc., 39,022 (La.App. 2 Cir. 11/23/04), 889 So.2d 329; Thomas v. Monroe, 36,526 (La. App. 2 Cir. 12/18/02), 833 So.2d 1282. As such, we find that the trial court did not err in finding that Mr. Melius did not demonstrate a probability of success on his claim for defamation.

Abuse of Process
Abuse of process mandates that the plaintiff prove that the defendant had an ulterior motive and an irregularity in the process itself. Alden v. Lorning, 04-0724, p. 5 (La.App. 4 Cir. 5/4/05), 904 So.2d 24, 28. When the irregular use of process is found, an ulterior motive is presumed. Id. An "`[a]buse of process involves the misuse of a process already legally issued whereby a party attempts to obtain a result not proper under the law.'" Alden, 04-0724, p. 6, 904 So.2d at 28, quoting Goldstein v. Serio, 496 So.2d 412, 415 (La.App. 4th Cir.1986). Using the legal process for an improper reason is the crux of finding an abuse of process. Id.
Mr. Melius asserts that the appeal to the BZA by Mr. Milliner on behalf of MARI constituted an abuse of process. The appeal sought to reverse the decision by the CPC and/or Safety and Permits to issue a building permit to BCI. Mr. Melius contends that Mr. Milliner "should have been" "well aware of the proper basis for an appeal of the issuance of a building permit to the BZA." Further, Mr. Melius asserts that Mr. Milliner and MARI "willfully misused the right of appeal to the BZA to further their ulterior motive of delaying or impeding the construction of appellants' lawful building."
However, the "regular use" of a BZA appeal is to seek review of a previous decision from a governing body, like those of the CPC. Therefore, an ulterior motive cannot be presumed as stated above. Mr. Melius presented no evidence, other than his affidavit and the affidavit of his wife. The uncorroborated assertions in the affidavits do not establish a probability of success on the claim of an abuse of process.

Malicious Prosecution
The plaintiff, in a claim for malicious prosecution, must prove:
(1) [T]he commencement or continuance of an original criminal or civil law judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff.
Darden, 03-1144, p. 11, 879 So.2d at 398-99, quoting Jones v. Soileau, 448 So.2d 1268, 1271 (La.1984). Like Mr. Melius' other claims, all elements must be present for him to prevail.
Again, other than Mr. and Mrs. Melius' affidavits, Mr. Melius did not present any evidence to show malice on the part of Mr. Keiffer, Mr. Milliner, and MARI. As such, without the likelihood of success in proving the malice element, Mr. Melius' claim for malicious prosecution cannot stand. Thus, we find that the trial court did not err in denying Mr. Melius' claim for malicious prosecution.

Intentional Infliction of Emotional Distress
Intentional infliction of emotional distress mandates that the plaintiff demonstrate:
(1)[T]hat the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe *174 emotional distress would be certain or substantially certain to result from his conduct.
Darden, 03-1144, p. 10, 879 So.2d at 398, quoting LaBove v. Raftery, 00-1394, pp. 16-17 (La.11/28/01), 802 So.2d 566, 577.
Mr. and Mrs. Melius failed to submit supporting evidence, other than their own affidavits, that Mr. Keiffer's, Mr. Milliner's, and MARI's conduct was extreme and outrageous. Additionally, Mr. and Mrs. Melius did not meet their burden that Mr. Melius suffered severe emotional distress and that severe emotional distress was substantially certain from the alleged harmful conduct. Therefore, we find that the trial court did not err in finding that Mr. Melius failed to show a probability of success on his claim for the intentional infliction of emotional distress.

ATTORNEY'S FEES AND COSTS
Mr. Keiffer, Mr. Milliner, and MARI assert that they are entitled to attorney's fees and costs. However, the issue of attorney's fees and costs is not properly before this Court as no answer to the appeal was timely filed pursuant to La. C.C.P. art. 2133. Thus, we will not consider the argument. Hand v. City of New Orleans, 04-0845, p. 5 (La.App. 4 Cir. 12/22/04), 892 So.2d 609, 612.

DECREE
For the above-mentioned reasons, we find that the trial court did not err in granting the motion to strike as the record lacks evidence to sustain Mr. Melius' and BCI's burdens of proof.
AFFIRMED.