WILLIAMS, J.
|! Plaintiffs, Thomas B. Cruse, Jr. and Donna Cruse Cagle, appeal the district court’s rulings sustaining defendant’s dilatory exception of improper cumulation of actions and peremptory exception of no cause of action. They also appeal the district court’s grant of a special motion to strike in favor of defendant, Bruce E. Hampton. For the following reasons, we affirm.
FACTS
Agnes Wylonda Carroll (“the decedent”) and Travis Carroll were married for more than 33 years. No children were born during their marriage; however both Travis and the decedent had children from prior marriages. On July 17, 2003, Travis Carroll died intestate; the decedent died testate on January 3, 2008. This dispute involves the decedent’s three surviving adult children, Thomas B. Cruse, Jr. (“Thomas”), Donna Cruse Cagle (“Donna”) and Ethyl Joyce Hornsby (“Ethyl”). Ethyl’s son, Gary Roark (“Gary”) and Bruce E. Hampton, an attorney, are also involved in this dispute.
*386 On July 21, 2003, the decedent executed a durable power of attorney, naming Ethyl and Gary as her mandataries. The document also named Ethyl as executrix of Travis Carroll’s succession. On May 18, 2006, a Judgment of Possession was rendered in Travis Carroll’s succession, placing his children (“the stepchildren”) in possession of his interest in the community property, subject to the decedent’s usu-fruct.
On November 8, 2006, Ethyl and Gary organized AWC, L.L.C. (“AWC”) in the state of Arkansas; Ethyl and Gary were the sole members 1 ?of the company. Subsequently, acting on the decedent’s behalf, Ethyl and Gary purchased the stepchildren’s interests in the family home and other “income producing” assets.[1] The decedent then sold most of her remaining assets to AWC.
In January 2007, the decedent was hospitalized in Arkansas. While there, she executed a will (“the Arkansas will”), in which she bequeathed virtually all of her estate to Ethyl, to the exclusion of Thomas and Donna. The Arkansas will was drafted by Robert Dawkins, an attorney practicing in Arkansas.
Soon thereafter, the decedent returned to Louisiana and retained the services of defendant, Bruce Hampton, an attorney practicing law primarily in Union Parish. On behalf of the decedent, Hampton prepared an act of donation, wherein the decedent transferred ownership of certain property, including her interest in the family home, to Ethyl. Hampton also drafted a cash sale deed, conveying one acre of land and a home/workshop to Gary. Several weeks later, the decedent and Ethyl asked Hampton to determine whether the Arkansas will would be valid in Louisiana. Hampton was uncertain about whether the will would meet Louisiana’s statutory requirements. Therefore, he drafted a “revised” will (“the Louisiana will”), which essentially mirrored the terms of the Arkansas will. In the Louisiana will, the decedent made certain “special legacies,” by which she bequeathed certain pieces of jewelry to Donna, Ethyl and her granddaughter. Additionally, just as the Arkansas will, the Louisiana will made Ethyl the | ^universal legatee of the remainder of the decedent’s estate. The will contained the following statement, “This bequest to [Ethyl] is due to her dedicated care and attention given to me[,] and for her having given up her job and income to do so.”
On April 27, 2007, Hampton and the decedent met to review the terms of the Louisiana will. The decedent affirmed that the Louisiana will expressed her desire concerning her property. She informed Hampton that it was not her desire to bequeath any of her property to Thomas and Donna. She also informed Hampton that all of her children were over the age of 24 and were not permanently incapable of caring for themselves. At the hearing on the exceptions, Hampton testified that the decedent was competent at the time the will was prepared and executed, and she was able to answer questions appropriately. Additionally, Hampton presented a letter from a physician which stated that the decedent was mentally capable of making business decisions and executing a will.
The decedent died almost a year later, on January 3, 2008. Subsequently, Ethyl, who had been named executrix of the decedent’s estate, retained Hampton to probate the will. On August 7, 2008, Hampton filed the necessary pleadings and documents to probate the will. A judgment of *387 possession was rendered on August 1, 2008, recognizing Ethyl as the universal legatee in accordance to the provisions of the decedent’s will.
On November 22, 2008, Thomas and Donna filed a pleading entitled “Petition to Annul and/or Declare Invalid Probated Testament of Agnes |4Wylonda Johnson Carroll and Action to Annul and/or Rescind Real Estate Transactions and Recover All Damages and Attorney’s Fees Due on Account of Fraud.” Ethyl, Gary and AWC were named as defendants. On November 4, 2009, plaintiffs amended their petition, adding as defendants Dawkins, the attorney who prepared the Arkansas will, and Hampton, the attorney who prepared the Louisiana will. Plaintiffs alleged, inter alia, that Hampton and Daw-kins (1) “engaged in and concealed a scheme to use [the] court in order to defraud each plaintiff and to intentionally bring about a result which each and both [attorneys] knew wrongfully invaded the interests of plaintiffs in a manner prohibited by [the] laws of forced heirship;” (2) “acted separately and in concert, to aid and assist [Ethyl and Gary] in order to convert and/or conceal certain property interests and succession rights which [all defendants] knew rightfully belonged to plaintiffs as forced heirs of [the decedent];” and (3) failed to communicate with plaintiffs with regard to their dealings with the decedent, Ethyl and Gary.[2]
Hampton filed a peremptory exception of no cause of action and a dilatory exception of improper cumulation of actions. Thereafter, Hampton filed a special motion to strike the allegations contained in the amended petition. The district court sustained the exception of improper cumulation, noting that the original petition sought to have the will and act of donation nullified, and the amended petition contained tort allegations, ie., fraud. |fiThe court stated, “The actions cumulated by the First Amending and Supplemental Petition are not mutually consistent with the original petition and do not employ the same sort of procedure as the original petition.”[3] The court also sustained the peremptory exception óf no cause of action and granted the special motion to strike. The court stated:
The plaintiffs are non-clients of [Hampton] and there are no allegations that [Hampton] acted with specific malice or intent personally to inflict direct harm upon them. [Hampton] has no legal duty to a person intentionally left out of a testament by a testator.
[[Image here]]
[T]he attorney does not owe a legal duty to contact non-clients when acting [on] his clients’ behalf.
The court awarded Hampton $7,500 in attorney’s fees.
Plaintiffs appeal.[4]
DISCUSSION

Exception of Improper Cumulation of Actions

Plaintiffs contend the district court erred in sustaining the dilatory exception *388 of improper cumulation of actions. They argue that the actions were properly cu-mulated because both the original petition and the amended petition contained allegations of fraud and included demands for damages. Plaintiffs also argue that the named defendants were co-conspirators in a fraudulent scheme, and therefore, a community of interests is clear.
LSA-C.C.P. art. 463 provides, in pertinent part:
Two or more parties may be joined in the same suit, Neither as plaintiffs or as defendants, if:
(1) There is a community of interest between the parties joined;
(2) Each of the actions cumulated is within the jurisdiction of the court and is brought in the proper venue; and
(3) All of the actions cumulated are mutually consistent and employ the same form of procedure.
[[Image here]]
(Emphasis added).
A suit to annul a probated testament shall be tried as a summary proceeding. LSA-C.C.P. art. 2931 and 2592.[5] A tort action must be brought by petition as an ordinary proceeding. See, LSA-C.C.P. art. 851 and 852.
In the instant case, plaintiffs sought to join their suit to annul the probated testament, which must be brought by summary proceeding, with their suit for damages, which must be brought by an ordinary proceeding. Such cumulation of actions is improper under Article 463, and the district court properly sustained Hampton’s exception of improper cumulation of 17actions. This assignment lacks merit.

Exception of No Cause of Action

Plaintiffs also contend the district court erred in sustaining the exception of no cause of action. Plaintiffs argue that Hampton engaged in and concealed a scheme to defraud plaintiffs and to intentionally invade their interests; therefore, the exception should have been denied.
In City of New Orleans v. Board of Directors of Louisiana State Museum, 98-1170 (La.3/2/99), 739 So.2d 748, the Louisiana Supreme Court explained the exception of no cause of action and the standard of appellate review of the lower court’s decision on such an exception. The court stated:
The purpose of the peremptory exception of no cause of action is to determine the sufficiency in law of the petition. The burden of showing that the plaintiff has stated no cause of action is upon the exceptor. The public policy behind the burden is to afford the party his day in court to present his evidenced] The exception is triable on the face of the [petition], and for the purpose of determining the issues raised by the exception, the court must presume that all well-pleaded facts in the petition are true. All reasonable inferences are made in favor of the nonmoving party in determining whether the law affords any remedy to the plaintiff[.] A court of appeal reviews de novo a lower court’s *389 ruling sustaining an exception of no cause of action because the exception raises a question of law and because the lower court’s decision is generally based only on the sufficiency of the petition[.j The question is whether, in the light most favorable to the plaintiff, the petition states any valid cause of action for relief]].]
Id. at 755-56 (internal citations omitted); see also LSA-C.C.P. art. 934.
An exception of no cause of action is likely to be granted only in the unusual case in which the plaintiff includes allegations that show on the |8face of the petition that there is some insurmountable bar to relief. Thus, dismissal is justified only when the allegations of the petition itself clearly show that the plaintiff does not have a cause of action, or when its allegations show the existence of an af-ftrmative defense that appears clearly on the face of the pleading. City of New Orleans v. Board of Com’rs of Orleans Levee Dist., 93-0690 (La.7/5/94), 640 So.2d 237 (emphasis added); Rogers v. Ash Grove Cement Co., 34,934 (La.App.2d Cir.11/2/01), 799 So.2d 841, writ denied, 2001-3187 (La.2/8/02), 808 So.2d 351. A court appropriately sustains the peremptory exception of no cause of action only when, conceding the correctness of the well-pleaded facts, the plaintiff has not stated a claim for which he can receive legal remedy under the applicable substantive law. Id.
An attorney’s paramount duty is, and must be, to his client. Scheffler v. Adams & Reese, LLP, 2006-1774 (La.2/22/07), 950 So.2d 641. An attorney does not owe a legal duty to his client’s adversary when acting on his client’s behalf. Id.; Montalvo v. Sondes, 93-2813 (La.5/23/94), 637 So.2d 127. However, an attorney may be held personally accountable for his intentional tortious conduct under the broad ambit of LSA-C.C. art. 2315. See, Montalvo, supra; Penalber v. Blount, 550 So.2d 577 (La.1989). A litigant who wishes to sue his adversary’s attorney must show that the attorney acted with a specific malice or intent to personally inflict direct harm upon his client’s adversary and with full knowledge that his conduct would cause such harm. Montalvo, supra; Penalber, supra.
Having reviewed plaintiffs’ amended petition, we find that it fails to Rallege facts sufficient to state a cause of action in intentional tort. Plaintiffs essentially alleged that Hampton conspired with Ethyl and Gary, and participated in a “scheme” with the intent to defraud plaintiffs of their rightful inheritance. Plaintiffs also alleged that Hampton failed to communicate with them to inform them, as possible forced heirs, regarding the testament and probate proceedings.
It is undisputed that plaintiffs are not, and never have been, Hampton’s clients. The petition alleged that Hampton was retained by the decedent to draft a testament and to assist with other transactions related to property owned by the decedent. Plaintiffs further alleged that, following the decedent’s death, Hampton was retained by Ethyl to initiate probate proceedings. Thus, Hampton owed a duty to his clients, the decedent and Ethyl.
Plaintiffs also alleged that Hampton failed to notify the court that plaintiffs were “possible” forced heirs; however, there are no specific allegations that Hampton acted with malice or in bad faith with the intent to cause direct harm to plaintiffs. The failure to notify the court of the existence of forced heirs may possibly constitute a violation of the rules of professional conduct; however, such allegations are not sufficient to give rise to intentional tortious conduct. The mere fact that plaintiffs were disinherited by *390 their mother does not give rise to a cause of action against the attorney who drafted the will and/or initiated the probate proceedings. Accordingly, we find that the district court did not err in sustaining the exception of no cause of action. This assignment lacks merit.
| inSpecial Motion to Strike
Plaintiffs contend the district court erred in granting defendant Hampton’s special motion to strike and dismissing their tort claims against him. Plaintiffs argue that, in granting the motion, the court misinterpreted and misapplied LSA-C.C.P. art. 971.
In response to plaintiffs’ allegations against him, Hampton filed a special motion to strike, seeking to “strike all of the plaintiffs’ first amending and supplemental petition in its entirety against Hampton.” Hampton alleged that plaintiffs’ claims were “without merit and are in response to his exercise of the constitutional right of petition or free speech.” Hampton also requested “reasonable attorney’s fees and costs incurred in the prosecution of [the] motion.” The district court granted Hampton’s motion and dismissed “all tort actions, claims and demands of [plaintiffs] against [Hampton].” The court further awarded Hampton attorney’s fees in the amount of $7,500 and court costs.
The special motion to strike is governed by LSA-C.C.P. art. 971, which provides, in pertinent part:
(1)A cause of action against a person arising from any act of that person in furtherance of the person’s right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.
(2)In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.
[[Image here]]
F. As used in this Article, the following terms shall have |nthe meanings ascribed to them below, unless the context clearly indicates otherwise:
(1) “Act in furtherance of a person’s right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue” includes but is not limited to:
(a) Any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law.
(b) Any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official body authorized by law.
(c) Any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest.
(d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.
(2) “Petition” includes either a petition or a reconventional demand.
(3) “Plaintiff’ includes either a plaintiff or petitioner in a principal action or a plaintiff or petitioner in reconvention.
(4) “Defendant” includes either a defendant or respondent in a principal action or a defendant or respondent in recon-vention.
The Louisiana legislature enacted LSA-C.C.P. art. 971 “to screen out meritless claims pursued to chill one’s con *391 stitutional rights under the First Amendment of the United States Constitution to freedom of speech and press.” Melius v. Keiffer, 2007-0189 (La.App. 4th Cir.3/12/08), 980 So.2d 167, 170, writ not considered, 2008-1039 (La.8/29/08), 989 So.2d 90, |12quoting Lee v. Pennington, 2002-0381 (La.App. 4th Cir.10/16/02), 830 So.2d 1037, 1041. The party filing the motion to strike bears the initial burden of proving that the cause of action arises from an act in the exercise of his right of free speech regarding a public issue. Melius, supra; Thinkstream, Inc. v. Rubin, 2006-1595 (La.App. 1st Cir.9/26/07), 971 So.2d 1092, writ denied, 2007-2113 (La.1/7/08), 973 So.2d 730, citing Aymond v. Dupree, 2005-1248 (La.App. 3d Cir.4/12/06), 928 So.2d 721, writ denied, 2006-1729 (La.10/6/06), 938 So.2d 85. Once this is proven, the plaintiff must then demonstrate a probability of success on the claim. Id.
The granting of a special motion to strike presents a question of law. Thinkstream, Inc., supra. Questions of law are reviewed de novo, with the judgment rendered “on the record, without deference to the legal conclusions of the tribunals below.” Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc., 2006-0582 (La.11/29/06), 943 So.2d 1037, 1045, citing Louisiana Municipal Association v. State, 2004-0227 (La.1/19/05), 893 So.2d 809, 836.
In Thinkstream, Inc., supra, the plaintiffs sued a law firm and three of its attorneys alleging that the plaintiffs suffered damages as a result of actions taken by the law firm in defending a client in litigation against the plaintiffs. Plaintiffs alleged, inter alia, that the law firm had made defamatory statements in an appeal filed with the Commissioner of Administration. In response, the law firm filed a special motion to strike. The trial court granted the motion, and the court of appeal affirmed, stating:
[I]t is undisputed that the cause of action against [the law firm] arose from an act by [the law firm] in furtherance 113of the right of petition or free speech, as the defendants made the allegedly defamatory statements in the original appeal they filed with the Commissioner on behalf of [its client]. As such, the allegedly defamatory comments were written statements made in connection with an issue under consideration or review by an executive or a judicial body, or any other official body authorized by law. See LSA-C.C.P. art. 971(F)(1)(b).
971 So.2d at 1100-1101.
We first address plaintiffs’ argument that Article 971 applies only to defamation claims and actions involving free speech. We find no merit in this contention. The express language of the article clearly establishes that it applies to “[a] cause of action against a person arising from any act of that person in furtherance of the person’s right of petition or free speech[J” LSA-C.C.P. art. 971(A)(1). (Emphasis added). Additionally, the legislature has expressed its intent that the article be “construed broadly.” See, Section 2 of Acts 1999, No. 734; Darden v. Smith, 2003-1144 (La.App. 3d Cir.6/30/04), 879 So.2d 390, writ denied, 2004-1955 (La.11/15/04), 887 So.2d 480.
In the instant case, plaintiffs’ amended petition contain numerous allegations against Hampton, arising from actions undertaken and pleadings .filed in court on behalf of his clients. As such, the actions taken by Hampton constituted written statements “made before a ... judicial proceeding, or any other official proceeding authorized by law.” See, LSA-C.C.P. art. 971(F)(1)(a). We find that Hampton met his burden of proving that plaintiffs cause of action arose from acts he undertook in the exercise of his right of free *392 speech or petition. Thus, the burden shifted to plaintiffs to demonstrate a probability of success on their claims. The record in this_J_ycase supports the district court’s finding that plaintiffs were unable to meet their burden.
Further, we do not find any merit in plaintiffs’ argument that the district court erred in awarding Hampton attorney’s fees. The district court correctly followed LSA-C.C.P. art. 971(B), which provides:
In any action subject to Paragraph A of this Article, a prevailing party on a special motion to strike shall be awarded reasonable attorney fees and costs.
(Emphasis added). This assignment lacks merit.
CONCLUSION
For the foregoing reasons, we affirm the district court’s rulings sustaining defendant’s dilatory exception of improper cu-mulation of action and peremptory exception of no cause of action. The district court’s grant of the special motion to strike in favor of defendant, Bruce E. Hampton, is also affirmed. Costs of the appeal are assessed to plaintiffs, Thomas B. Cruse, Jr. and Donna Cruse Cagle.
AFFIRMED.

. According to plaintiffs, the decedent and Travis Carroll owned "substantial community property,” including a home, oil royalties, stocks and commercial leases.

. Dawkins filed exceptions of improper venue, no cause of action and prematurity. The district court sustained the exceptions and dismissed Dawkins from these proceedings. Plaintiffs did not appeal that judgment, and Dawkins is not a party to this appeal.

. The court ordered plaintiffs as follows: "to withdraw or amend the first amending ... petition to remove the tort claims against [Hampton] within [30] days ... or said petition will be dismissed for noncompliance with this order."

.The claims against Ethyl and Gary are not at issue in this appeal.

. LSA-C.C.P. art. 2931 provides:
A probated testament may be annulled only by a direct action brought in the succession proceeding against the legatees, the residuary heir, if any, and the executor, if he has not been discharged. The action shall be tried as a summary proceeding.
(Emphasis added). LSA-C.C.P. art. 2592 provides, in pertinent part:
Summary proceedings may be used for trial or disposition of the following matters only:
[[Image here]]
(9) An action to annul a probated testament under Article 2931.
[[Image here]]