Judge Terri F. Love
|'iDefendant, Nancy Pavón (“Ms. Pa-vón”), appeals the trial court ruling that granted plaintiff Phillip Shelton’s (“Dr. Shelton”) special motion to strike Ms. Pa-von’s reconventional demand and that awarded attorney fees and costs to Dr. Shelton as the prevailing party on the motion to strike. We find Dr. Shelton’s petition does not involve a public issue, but rather, a private matter between private parties. Thus, La. C.C.P. art. 971 does not apply. Further, the ruling on the motion to strike is not designated a final judgment, does not name the party against whom the ruling is ordered, or specify what relief is granted. We, therefore, convert the appeal to a writ, reverse the trial court ruling on the special motion to strike, and remand the matter- for a determination of reasonable attorney fees and costs in Ms. Pavon’s *606 favor as the prevailing party pursuant to La. C.C.P. art. 971(B).

PROCEDURAL HISTORY AND BACKGROUND

Dr. Shelton and Judith Shelton (“Mrs. Shelton”) were married in November 2001. Mrs. Shelton owned a life insurance policy which named Dr, Shelton as the beneficiary. However, Dr. Shelton learned after his wife died that the beneficiary on her life insurance policy had changed from him to Nancy Pavón, Mrs, Shelton’s former paralegal and friend. In November 2013, Dr. Shelton filed a petition to |2nullify the change of beneficiary. He alleged that Mrs. Shelton’s signature authorizing the change of beneficiary was obtained through fraud, in the form of forgery, and undue influence by Ms. Pavón. Ms. Pavón filed an answer and reconventional demand, claiming that Dr. Shelton’s petition was defamatory and that she be awarded damages.
Dr. Shelton subsequently filed a special motion to strike pursuant to La. C.C.P. art. 971. In opposition, Ms. Pavón argued for summary dismissal of the special motion to strike because as a matter of law Dr. Shelton’s petition does not involve a public issue. After a contradictory hearing, the trial court took the matter under advisement. The trial court later granted the motion to strike and awarded attorney fees and costs in favor of Dr. Shelton as the prevailing party. Thereafter, Ms. Pavón filed a motion for new trial. The trial court denied a new trial and granted a request for designation as a final appealable judgment. Ms. Pavón files the instant appeal.

JURISDICTION

We begin by addressing a procedural matter as to this Court's jurisdiction on appellate review. While the January 27, 2016 judgment granted the special motion to strike and awarded Dr. Shelton reasonable attorney fees and costs, issues remain between the parties. The judgment granting the motion to strike is not designated a final appealable judgment. The trial court designated the denial of the motion for new trial as a final judgment; however, the denial of a motion for new trial is not subject to designation as a final judgment. La. C.C.P. art. 1915. Additionally, the January 27, 2016 judgment does not name the party against whom the ruling is ordered and does not specify the relief granted. See La. C.C.P. art. 1841; Bd of Sup’rs of LSU v. Mid City Holdings, 14-0506, p. 2-3 (La. App. 4 Cir. 10/15/14), 151 So.3d 908, 910. The motion for appeal was filed within 30 days of the judgment. Thus, the time period for filing an application for supervisory writ had not prescribed. Therefore, we invoke our supervisory jurisdiction and convert the appeal to a writ. Id., 14-0506, p. 3-4, 151 So.3d at 911.

STANDARD OF REVIEW

An appellate court reviews special motions to strike de novo because it involves issues of law. Melius v. Keiffer, 07-0189, p. 2 (La.App. 4 Cir. 3/12/08), 980 So.2d 167, 170. The appellate court is charged with determining whether the trial court’s judgment was legally correct or incorrect. Id.

SPECIAL MOTION TO STRIKE

La. C.C.P. art. 971 was enacted “to screen out meritless claims pursued to chill one’s constitutional rights under the First Amendment of the United States Constitution to freedom of speech and press.” Lee v. Pennington, 02-0381, p. 4 (La.App. 4 Cir. 10/16/02), 830 So.2d 1037, 1041; Melius, 07-0189, p. 2, 980 So.2d at 170. La. C.C.P. art. 971(A)(1) provides:
(A)(1) A cause of action against a person arising from any act of that person in *607 furtherance of the person’s right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.
Id. (emphasis added).
The party filing the special motion to strike has the initial burden of proving that “the cause of action arises from an act in the exercise of his right of free speech regarding a public issue.” Melius, 07-0189, p. 3, 980 So.2d at 171, quoting Aymond v. Dupree, 05-1248, p. 7 (La.App. 3 Cir. 4/12/06), 928 So.2d 721, 727 (internal quotations omitted). If the mover meets this threshold requirement, the Uburden shifts to the party opposing the motion and must demonstrate a probability of success on the claim. Id. To determine whether the opposing party has established a probability of success on his claim, the court will “consider the pleadings and supporting \f] opposing affidavits.” La. C.C.P. art. 971(A)(2).
Dr. Shelton contends that the statutory language of La. C.C.P. art. 971 is unambiguous. He argues that a special motion to strike is the proper procedural remedy to address Ms. Pavon’s reconventional demand because his petition to nullify a change in beneficiary is one of the expressly defined speech activities protected under the statute—a written statement made before a judicial proceeding. See La. C.C.P. art. 971(F)(1)(a). He also claims Ms. Pavón cannot demonstrate a probability of success on her defamation claim. Conversely, Ms. Pavón argued that as a matter of law Dr. Shelton’s petition is not an act in connection to a public issue; thus, article 971 does not apply. Moreover, Ms. Pavón avers that a special motion to strike is the incorrect procedural mechanism to dismiss her defamation claim.
The trial court was correct in beginning its application of La. C.C.P. art. 971 by first determining whether Dr. Shelton’s petition to nullify the change of beneficiary constituted an act' in furtherance of his right to petition in connection with a public issue. The trial court relied on the definitional provisions of La. C.C.P. art. 971(F)(l)(a)-(d), setting forth the types of speech activities that constitute “[a]ct[s] in furtherance of the person’s right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue.” La. C.C.P. art. 971(F)(1).
The trial court held that Dr. Shelton’s petition is within the class of speech activities defined by subsection (F)(1)(a) as it is a written statement made before a Injudicial proceeding. The trial court found that based on the definitional language of La. C.C.P. art. 971(F)(1)(a) Dr. Shelton met his prima facie burden under the statute. In light of our de novo review and the facts of this case, we disagree with the trial court’s interpretation of the statute and its application of La. C.C.P. art. 971(F)(1)(a).
In cases of first impression, this Court’s interpretation of article 971 focused on the probability of success factor. See Stern v. Doe, 01-0914 (La.App. 4 Cir. 12/27/01), 806 So.2d 98; Lee, 02-0381 (La.App. 4 Cir. 10/16/02), 830 So.2d 1037. Appellate courts now interpret the statute under a burden-shifting analysis. This Court’s decisions since Stem and Lee either addressed portions of the statute inapplicable here or found the act was made in connection with a public issue. Cf., Williams v. New Orleans Ernest N. Morial Convention Ctr., 11-1412 (La.App. 4 Cir. 5/11/12), 92 So.3d 572 (finding suit involved a private dispute between private parties without discussion *608 of statutory interpretation or legislative intent).
For this reason, we find Yount v. Handshoe, 14-919 (La.App. 5 Cir. 5/28/15), 171 So.3d 381, writ denied, 15-2302 (La. 2/19/16), 187 So.3d 462, instructive. In Yount, the Fifth Circuit examined the same issue of a trial court’s erroneous interpretation and application of article 971’s definitional provisions.[1] Id. The Yount decision provided a comprehensive analysis of article 971’s inception that studied the legislative history, the drafters’ intent, and the statute’s application in earner decisions. These considerations form the basis of our | ^interpretation of article 971.
“Statutory interpretation begins with the language of the statute itself.” Id., 14-919, p. 7 (La. App. 5 Cir. 5/28/15), 171 So.3d at 386 (citing M.J. Farms, Ltd. v. Exxon Mobil Corp., 07-2371 (La. 07/01/08), 998 So.2d 16, 27). “When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.” La. C.C. art. 9. “When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law.” La. C.C. art. 10. Generally, words are given their prevailing meaning, but “when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole.” La. C.C. arts. 11 and 12.
La. C.C.P. art. 971(F)(1)(a) provides:
(F) As used in this Article, the following term shall have the meanings ascribed to them below, unless the context clearly indicates otherwise:
(1) “Act in furtherance of a person’s right of petition or free speech of the United States or Louisiana Constitution in connection with a public issue” includes but is not limited to:
(a) Any written or oral statement or writing made before a legislative, executive or judicial proceeding, or any other official proceeding authorized by law.
We find the language of La. C.C.P. art. 971(F)(1)(a) is ambiguous because it is susceptible to different meanings.[2] First, the language may be read to indicate that a special motion to strike will apply to any issue made before a judicial 17proceeding. Second, the statute may be interpreted to mean that a special motion to strike will apply only to statements or writings made in connection with a public issue. The trial court applied the former interpretation; however, this reading of La. C.C.P. art. 971(F)(1)(a) leads to absurd consequences.
*609 Under the interpretation adopted by the trial court, “any cause of action arising from any written or oral statement made in connection with any kind of government activity or proceeding would be subject to special motions to strike regardless of whether or not the statements were made in connection with a public issue.” Yount, 14-919, p. 8, 171 So.3d at 387. Interpreting subsection (F)(1)(b), the Yount court concluded that “any party could defame or invade the privacy of a person involved in a divorce proceeding, traffic violation, child custody dispute, marriage, mortgage registration, passport application, or driver’s license renewal and be immunized from legal repercussions of damage to others through the use of an extraordinary procedural remedy.” Id., 14-919, p. 8-9, 171 So.3d at 387. The same logic applies to section (F)(1)(a).
Given that the competing meanings may lead to absurd results, this Court must assess which interpretation best conforms with the purpose of the law and the will of the legislature. La. C.C.P. art. 10; Yount, 14-919, p. 9, 171 So.3d at 387. The Yount court examined the legislative history of article 971, Louisiana’s Anti-SLAPP statute. “ ‘SLAPP’ is an acronym for Strategic Lawsuit Against Public Participation, a term...to describe generally meritless suits brought by large private interests to deter common citizens from exercising their constitutional right to petition or to punish them from doing so.” Id. SLAPP suits involve civil complaints or counterclaims filed against a non-governmental individual and/or group due to “their communications to a governmental body, or the electorate on Ran issue of some public interest or concern." Id. (citing Professors George W. Pring & Penelope Canan, SLAPPs: Strategic Lawsuits Against Public Participation, 7 Pace Envtl. L.Rev. 3 (1989)) (emphasis added).
As a result of the growing number of SLAPP suits and the inadequacy of traditional legal remedies to address the problem, states enacted legislation to create the special motion to strike. Yount, 14-919, p. 10, 171 So.3d at 387. Its purpose is “to protect comments made in connection with public rather than private issues under consideration by our governmental bodies.” 1999 La. Acts 734, § 2.
Moreover, Louisiana jurisprudence indicates that La. C.C.P. art. 971 is meant to protect speech activities pertaining to public issues. See Starr v. Boudreaux, 07-0652 (La.App. 1 Cir. 12/21/07), 978 So.2d 384 (publication of newspaper articles about sudden removal of local radio station); Melius, supra (comments made by a neighborhood association president before a zoning board against the construction of a new bar); Cf., Williams, supra (placement of an oversized photograph at security check point to ensure denial of entry was a private issue between private parties; article 971 did not apply).
In this case, the trial court relied in part on In re Succession of Carroll, 46,327 (La. App. 2 Cir. 7/20/11), 72 So.3d 384, wherein the reviewing court found the pleadings filed constituted written statements “made before a.. .judicial proceeding” pursuant to La. C.C.P. art. 971(F)(1)(a). The trial court’s reliance on Carroll is misplaced. First, the decisions of other circuits are not binding on this Court and are persuasive authority only. S. Louisiana Ethanol, LLC v. CHS-SLE Land, 14-0127, p. 18, 161 So.3d 83, 94 n. 4, writ denied, 15-0481 (La. 5/15/15), 170 So.3d 967 (citing Bridges v. Production Operators, Inc., 07-0648, p. 7 (La.App. 4 Cir. 12/12/07), 974 So.2d 54, 59. Second, while Carroll is factually similar as it involved allegations arising from pleadings made in a judicial proceeding, we decline to follow the holding in Carroll.
*610 Carroll quotes the language of La. C.C.P. art. 971(A)(1) but stops short of citing the operative clause, “made in connection with a public issue.” Consequently, the Carroll court never engaged in the requisite analysis of whether the speech was made in connection with a public issue. Instead, the court reasoned that it is the legislature’s expressed intent “that the article be ‘construed broadly.’ ” Carroll, 46,-327, p. 13 (La.App. 2 Cir. 7/20/11), 72 So.3d 384, 391 (quoting 1999 La, Acts 734, § 2). Therefore, it applied La. C.C.P. art. 971(F)(1)(a) to conclude that the defendant met his initial burden.
It is well-settled that a statute may not be construed so broadly that it defeats the purpose for which it was enacted or lead to absurd consequences. Like Carroll, we are charged with reaching a result consistent with the legislature’s purpose of the statute. If we were to conclude that any act in furtherance of a person’s right of petition is protected such that a special motion to strike is an available procedural remedy, we would lend an interpretation to article 971 that would defeat the express intent of the statute: “to encourage participation [and] [... ] to protect comments made in connection with public rather than private issues under consideration by our governmental bodies.” 1999 La. Acts 734, § 2. Similarly, the Carroll interpretation would .render meaningless the limiting term, “in connection with a public issue.”
At the hearing, the trial court also expressed concerns that even if article 971 did not apply, as Ms. Pavón claimed, an allegation in a pleading is subject to a qualified privilege. However, the law of qualified privilege “has ho bearing on 110[mover’s] initial burden of proving his actions arose in connection with a public issue under Article 971.” Yount, 14-919, p. 13, 171 So.3d at 389. Furthermore, the Carroll interpretation obviates the'rules of qualified privilege because it would incorrectly treat a special motion to strike as an absolute privilege against liability for defamatory statements made in a judicial proceeding. The effect of this interpretation is that a defamation claim may be automatically dismissed unless the party opposing the motion to strike can prove a probability of success. The appropriate procedural remedy in that case is a motion for summary judgment.
In light of the legislative history, relevant case law, and the statutory language as a whole, we find La. C.C.P. art. 971(F)(1)(a) requires the statements made in a judicial proceeding be made in connection with a public issue. In Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983), the United States Supreme Court described speech on matters of public concern as speech “relating to any matter of political, social, or other concern to the community.” To determine whether speech is a matter of public concern, the court must consider the content, form, and context of the statement, as revealed by the entire record. Id., 461 U.S. at 147-48, 103 S.Ct. at 1690; Kirksey v. New Orleans Jazz & Heritage Found., Inc., 12-1351, p. 6 (La.App, 4 Cir. 2/27/13), 116 So.3d 664, 669.
In this case, Dr. Shelton’s petition to nullify a change of beneficiary to his wife’s life insurance policy is a private dispute involving private parties, not a matter of public concern or significance. Therefore, Dr. Shelton has not met his burden of proving that his petition is an act in furtherance of his right to petition in connection with a public issue. Accordingly, we need not determine the probability of success of Ms. Pavon’s defamation claim filed in reconvention.
*611 1 ^DECREE
We find the trial court erred by granting Dr. Shelton’s special motion to strike and awarding him attorney fees and costs because the statements in question were not made in furtherance of his right to petition in connection with a public issue. Therefore, we reverse the trial court’s ruling. Pursuant to La. C.C.P. art. 971(B), . .a prevailing party on a special motion to strike shall be awarded reasonable attorney fees and costs.” Thus, we also award Ms. Pavón as the prevailing party reasonable attorney fees and costs to be determined by the trial court on remand. Yount, 14-919, p. 14, 171 So.3d at 890. Accordingly, we convert the appeal to a writ; grant the writ; and reverse the trial court’s ruling and remand for further proceedings consistent with this opinion.
APPEAL CONVERTED TO WRIT; WRIT GRANTED; REVERSED AND REMANDED
LEDET, J., CONCURS IN THE RESULT WITH REASONS

. In Yount, the plaintiff brought a defamation claim against a blogger, who published online a pornographic drawing authored by the plaintiff's son that was previously filed with the court as part of the plaintiff’s divorce proceeding. Id., 14-919, p. 3, 171 So.3d at 383. The trial court granted defendant’s motion to strike the defamation claim pursuant to La. C.C.P. art. 971(F)(1)(b); however, the Fifth Circuit reversed holding defendant’s posting was not an act made in furtherance of his right of petition in connection with a public issue. Id., 14-919, p. 14, 171 So.3d at 390.

. Dr. Shelton points out that we previously held that there are "no ambiguities in Article 971” in Delta Chemical Corp. v. Lynch, 07-0431, p. 12, 979 So.2d 579, 587 (La. App. 4 Cir. 2/27/08). However, the primary issue in Delta was the reasonableness of the attorney fees award. Our finding addressed the scope of individuals/entities which may move for a special motion to strike and are entitled to an award of attorney fees. This Court's conclusion as to article 971 did not contemplate whether the act involved must be related to a public issue as raised in this matter.