Judge Roland L. Belsome
h Dwayne Alexander appeals the trial court’s granting of Defendants’ Special Motion to Strike and resulting dismissal of the petition with prejudice. For the reasons that follow, the judgment is affirmed.
Statement of the Case
Mr. Alexander is a former Private Investigator (“PI”). The Times-Picayune published two news articles written by reporter David Hammer. The first news arti *201 cle at issue was published on July 2, 2009, and reported that the Louisiana State Board of Private Investigators (the “Board”) issued a cease and desist order to Mr. Alexander for his failure to maintain a PI license. The October 24, 2011 news article reported that Mr. Alexander had been arrested in St. Charles Parish for providing PI services -without possessing a valid license.
Mr. Alexander filed suit against Defendants on December 16, 2015, alleging that he was defamed by these news articles. Defendants responded by filing a Special Motion to Strike the petition under La. C.C.P. art. 971. Defendants’ motion argued that Mr. Alexander could not establish a probability of success because his |2claims had prescribed. The trial court granted the motion on the grounds of prescription and dismissed the claims.
Mr. Alexander filed a motion for new trial. Defendants filed a motion to fix attorneys’ fees and costs. Mr. Alexander’s motion for new trial was denied and Defendants’ motion was granted. It is this judgment from which Plaintiff appeals.
Issues on Appeal
Mr. Alexander contends that the trial court erred in granting Defendants’ Special Motion to Strike. He claims that La. C.C.P. art. 971 did not apply to his claims because he is not a public official or figure and the claims do not relate to a public issue. He also argues that even if Article 971 did apply, the court improperly granted the motion on the basis of prescription. He further asserts that the trial court was required to give him the opportunity to amend his petition before dismissing his claims. Finally, he claims that attorney’s fees and costs were improperly awarded to Defendants.
Standard of Review
“Appellate courts review a trial court’s ruling on a special motion to strike using the de novo standard of review because it involves an issue of law; the issue on review is thus whether the trial court was legally correct.”[1]
Law and Discussion

Applicability of the Special Motion to Strike to Mr. Alexander’s Claims

hOn appeal, Mr. Alexander argues that the La. C.C.P. art. 971 Special Motion to Strike does not apply to his claims because he is not a public official or public figure and that his claims do not relate to a public issue.
La. C.C.P. art. 971(A)(1) states that “[a]cause of action against a person arising from any act of that person in furtherance of the person’s right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.” The purpose of the Article 971 Special Motion to Strike is “to screen out meritless claims pursued to chill one’s constitutional rights under the First Amendment of the United States Constitution to freedom of speech and press.” [2] The party that files the motion “has the initial burden of proving that ‘the cause of action arises from an act in the exercise of his right of free speech regarding a public issue.’”[3]
*202 La. C.C.P. art. 971(F)(1)(c) provides that an act in furtherance of a person’s right to free speech under the First Amendment includes “[a]ny written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest.” The content, form, and context of the statement(s) at issue must be. examined to establish if speech is a matter of public concern.[4]
| ¿Defendants asserted in the motion that Mr. Alexander’s claims arose from acts in furtherance of the right of free speech and in relation to a public issue. The first article that Mr. Alexander claims he was defamed by was published on July 2, 2009, and reported that the Board had issued a cease and desist order to Mr. Alexander .because he failed to maintain a PI license. Specifically the 2009 article focused on Alexander’s earnings of more than $522,000 from the City of New Orleans during 2007 and 2008 for' services he conducted after his license lapsed in 2006. The second article at" issue was published on October 21, 2011, and reported on Mr. Alexander’s PI work for the St. Charles Parish School Board and his subsequent arrest for providing contract or PI services without possessing a valid license.
We find that both of these news articles concerned matters of public importance such that La, C.C.P. art. 971 does apply. The expenditures of public money by both the City of New Orleans and the St. Charles Parish School Board to an individual contracted to perform- services are certainly matters of public importance.[5] Considering that the news articles concerned issues of concern to the community, it is irrelevant that Mr. Alexander was not a public figure or public official. Therefore, Defendants satisfied their initial burden of proof under La. C.C.P. art. 971.

IsPrescription cmd the Special Motion to Strike

Mr.- Alexander 'next- contends that an Article-971 Special Motion to Strike is only properly directed to the substance of a claim, and thus the trial' court committed legal error by granting the motion on the basis of prescription. We disagree.
La. C.C.P.art. 971 provides that once the movant has satisfied his initial burden of proving the claim qualifies under the statute, the burden shifts to the opposing party to demonstrate a probability of success oh the claim.[6] To determine whether the opposing party has established a probability of" success on his claim, the court will examine the pleadings as well as supporting and opposing affidavits,[7] Article 971 does not limit the grounds upon which a trial court may find that a plaintiff failed to establish a probability of success on the merits. As an affirmative defense, pre *203 scription will prevent a claimant from .being successful on the merits of his claim.[8] As such, the affirmative defense of prescription may be asserted as a basis for granting the motion.
Defamation claims sound in tort, and as such are subject to a prescriptive period of one year which commences to run from the day the injury is sustained.[9] Generally in the context of defamation, prescription begins to run from the date of | fithe publication of the allegedly defamatory remarks.[10] The burden of proving prescription generally lies with the party asserting prescription; however, when a claim has prescribed on its face the burden shifts to the plaintiff to prove that his claim has not prescribed.[11] In some exceptional circumstances, the doctrine of contra non valentum may serve to interrupt prescription “[wjhere the cause of action is neither known nor reasonably knowable by the plaintiff.”[12] However, where the plaintiff could have learned of his cause of action through reasonable diligence, the “discovery exception” of contra non valentum will not apply to interrupt prescription.[13]
In the Special Motion to Strike, Defendants did not attack Mr. Alexander’s ability to prove the elements of his defamation claim.[14] Rather, they argued that Mr. Alexander would be incapable of prevailing on the merits of the case because his claims had prescribed.
It is clear that both of Mr. Alexander’s defamation claims were prescribed on the face of the petition. Mr. Alexander’s two defamation claims arose on the dates that the news articles at issue were published—July 2, 2009 and October 24, 2011, respectively. He filed this lawsuit -against Defendants on December 16, 2016. 17Therefore, well over a year had passed between each cause of action arising and the filing of the petition alleging defamation.
While it is clear that both of Mr. Alexander’s defamation claims were prescribed on the face of the petition, Mr. Alexander avers that the doctrine of contra, non valentum applied to his claims and interrupted the running of prescription because he did not discover certain evidence in support of his defamation claim until 2014 or 2015.[15] He asserts that he could *204 not have possibly known of the falsity of the claimed cease and desist order reported on in 2009 by Defendants until a witness at the 2014 trial testified that the cease and desist order was false.[16]
A review of the record indicates that Alexander’s claim that he was unaware of the falsity of the cease and desist order until the 2014 trial is inaccurate. The record includes Alexander’s pleadings in his lawsuit against the Louisiana State Board of Private Investigator Examiners filed on January 14, 2013, in which he alleged that the Board and its executive director “fail[ed] to disseminate the correct information regarding the cease and desist order and to update petitioner’s file at the Agency, resulting in the loss of petitioner’s DBE contract and causing the local media to publicly ridicule petitioner.” These assertions defeat Alexander’s claim 18that he was not aware of the falsity of the claims made in the 2009 article until 2014. By his own admission, Mr. Alexander had knowledge of his defamation claim for the 2009 news article well over a year before he filed suit in December 2015. Therefore, the trial court was correct in finding that his claim was prescribed.
Additionally, the record indicates that Alexander had knowledge of the alleged falsity of the information in the 2011 news article which reported on Mr. Alexander’s arrest for engaging in PI services without a license in St. Charles Parish over a year before he filed the present suit. This Court’s previous ruling in Alexander v. La. State Bd. of Private Investigator Examiners found that Alexander had knowledge of the events giving rise to the alleged falsity of the grounds for his 2011 arrest on December 19, 2012.[17] In the prior case, Mr. Alexander claimed that he learned at the time of his arrest on October 24, 2011 that he was being charged with conducting private investigation services without a license.[18] Mr. Alexander | 9averred that the defamatory and tortious conduct against him was continuing and undiscoverable until he was provided with the State’s criminal file on December 19, 2012. This Court, in finding that contra non valentum served to suspend prescrip *205 tion based on the discovery doctrine, stated:
We further find that the contra non valentem doctrine applies to suspend prescription as to Mr. Alexander’s defamation claim arising out of the Defendants’ 2011 actions. As to that defamation claim, we find prescription was suspended until December 19, 2012. Since Mr. Alexander filed suit within the one-year of that date (on January 14, 2013), we find his defamation claim based on the Defendants’ 2011 actions is not prescribed.
Considering this Court’s prior finding that Mr. Alexander gained knowledge on December 19, 2012 of the alleged falsity of any information contained in the 2011 news article at issue, Mr. Alexander’s claims against Defendants relating to that article had also prescribed by the time he filed this lawsuit on December 16, 2015. Therefore, the trial court also correctly found that his defamation claim for the 2011 news article had prescribed.

Opportunity to Amend Petition

Mr. Alexander argues that he should have been given the opportunity to amend his petition to cure any defects. However, as prescription is a defect that cannot be cured, the court was correct in declining to give him an opportunity to amend his petition.[19]

Attorney’s Fees and Costs

|inMr. Alexander’s final assignment of error is that the trial court erred in granting Defendants’ Motion to Fix Attorney’s Fees and Costs, and awarding the Times-Picayune $5,306 in attorney’s fees and $92.50 in costs.
La. C.C.P. art. 971(B) states that “[i]n any action subject to Paragraph A of this Article, a prevailing party on a special motion to strike shall be awarded reasonable attorney fees and costs.” (emphasis added). As Defendants prevailed on the motion, and the language of the statute provides that attorney’s fees and costs are mandatory for a prevailing party, we find that the trial court properly awarded attorney’s fees and costs to Defendants.
CONCLUSION
For the reasons set forth above,' we affirm the judgment of the trial court.
AFFIRMED

. Herman v. Tracage Dev., L.L.C., 2016-0082, p. 4 (La.App. 4 Cir. 9/21/16), 201 So.3d 935, 939.

. Shelton v. Pavon, 2016-0758, p. 3 (La.App. 4 Cir. 2/15/17), 212 So.3d 603, 606, quoting Lee v. Pennington, 02-0381, p. 4 (La.App. 4 Cir. 10/16/02), 830 So.2d 1037, 1041.

. Id., at 607, citing Melius v. Keiffer, 2007-0189, p. 3 (La.App. 4 Cir. 3/12/08), 980 So.2d *202 167, 171, writ not considered, 2008-1039 (La. 8/29/08), 989 So.2d 90.

. Kirksey v. New Orleans Jazz & Heritage Found., Inc., 2012-1351, p. 6 (La.App. 4 Cir. 2/27/13), 116 So.3d 664, 669, writ denied, 2013-0686 (La. 5/3/13), 113 So.3d 216, citing Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

. This finding is consistent with decisions made by Louisiana courts regarding matters of public importance. See Kirksey, p. 5, 116 So.3d at 668 (finding that allegations of misappropriation of funds' owed to the Foundation was a matter of public concern because the Jazz Festival is a premier entertainment event that contributes millions of dollars to the city’s economy each year); See also Melius, p. 5 980 So.2d at 172 (finding that statements on a neighborhood residents’ association website regarding opposition to plans to construct a new bar in the city involved matters of public importance).

. Shelton, pp. 3-4, 212 So.3d at 607.

. Id., p. 4, 212 So.3d at 607, quoting La. C.C.P. art. 971(A)(2).

. See Scott v. Metro. Life Ins. Co., 97-1445 (La.App. 4 Cir. 2/11/98), 709 So.2d 223, 225, writ denied, 98-1010 (La. 5/29/98), 720 So.2d 668 ("[i]f the petition shows on its face it has prescribed, then the burden of proof shifts to the plaintiff to counter the affirmative defense of prescription.”)

. La. C.C. art. 3492; Farber v. Bobear, 2010-0985, p. 11 (La.App. 4 Cir. 1/19/11), 56 So.3d 1061, 1069.

. See, e.g. Clark v. Wilcox, 2004-2254, p, 10 (La.App. 1 Cir. 12/22/05), 928 So.2d 104, 112-13; Collinson v. Tarver Land Dev., LLC, 2011-1787, 2012 WL 688551, at *1 (W.D. La. Feb. 1, 2012), report and recommendation adopted, No. 11-CV-1787, 2012 WL 692193 (W.D. La. Mar. 2, 2012).

. Farber, p. 11, 56 So.3d at 1069.

. Renfroe v. State ex rel. Dep't of Transp. & Dev., 2001-1646, p. 9 (La. 2/26/02), 809 So.2d 947, 953.

. Id., p. 10, 809 So.2d at 953.

. See Melius, p. 5, 980 So.2d at 172. The elements of a defamation claim are: “(1) a false or defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury.”

. Mr. Alexander further argues that the Times-Plcayune had a duty to print a retraction once the publication became aware that the content of the news articles was false. It is of note that Louisiana does not have a requirement that news publications print such retractions. The printing of a retraction is *204 simply a factor to be considered by the trial court as a mitigating factor for setting the amount of damages. See Francis v. Lake Charles Am. Press, 262 La. 875, 265 So.2d 206, 219 (1972).

. See Alexander v. La. State Bd. of Private Investigator Examiners, 2015-0537 (La.App. 4 Cir. 2/17/17), 211 So.3d 544, reh’g denied (Mar. 10, 2017). Mr. Alexander filed suit against the Louisiana State Board of Private Investigators asserting, among others, claims of defamation.

. 2015-0537 (La.App. 4 Cir. 2/17/17), 211 So.3d 544, reh’g denied (Mar. 10, 2017).

. The following day the Times-Picayune published the news article at issue in the present case.
The article included the following passages: The St. Charles Parish Sheriff’s Office has arrested [Mr. Alexander] accused of performing unlicensed private investigator work for the St. Charles Parish School Board,
* * *
He had been wanted since June on a warrant for that charge, issued following an investigation by the St. Charles Sheriff’s Office.
[[Image here]]
The Metropolitan Crime Commission contacted St. Charles school Superintendent Rodney Lafon in May, according to the affidavit, at which time Lafon asked the Sheriff's Office to investigate.
[Mr.] Alexander had been served with a cease-and-desist order from the Louisiana State Board of Private Investigator Examiners in 2009 preventing him from conducting any type of private investigations, and that order was still in effect when he did the work for the School Board, according to the affidavit.

. See Wegmann v. Tramontin, 2015-0561, p. 8 (La.App. 4 Cir. 1/13/16), 186 So.3d 236, 241, writ denied, 2016-0276 (La. 4/4/16), 190 So.3d 1209 ("[I]f the amendment is futile, there is no right to amend.”).