971 So.2d 1092 (2007)
THINKSTREAM, INC. and Barry Bellue
v.
Michael H. RUBIN, Deborah D. Harkins, Emily B. Grey and McGlinchey Stafford, PLLC.
No. 2006 CA 1595.
Court of Appeal of Louisiana, First Circuit.
September 26, 2007.
*1095 Brent D. Burley, Gonzales, LA, for Plaintiff-Appellant, Barry Bellue.
Richmond C. Odom, Baton Rouge, LA, for Plaintiff-Appellant, Thinkstream, Inc.
James H. Gibson, David J. Ayo, Allen & Gooch, Lafayette, LA, for Defendants-Appellees, Michael H. Rubin, Deborah D. Harkins, Emily B. Grey, and McGlinchey Stafford, PLLC.
Before PARRO, GUIDRY, and McCLENDON, JJ.
PARRO, J.
Plaintiffs, Thinkstream, Inc. (Thinkstream) and Barry Bellue, appeal the judgment of the trial court, dismissing their suit with prejudice pursuant to a special motion to strike in accordance with LSA-C.C.P. art. 971. We affirm.

FACTUAL AND PROCEDURAL HISTORY
This matter involves a suit for damages filed by Thinkstream and Bellue, Thinkstream's president and CEO, against the law firm of McGlinchey Stafford, PLLC, Michael H. Rubin, Deborah D. Harkins, and Emily B. Grey (collectively, McGlinchey). Thinkstream and Bellue allege that they sustained damages as a result of actions taken by McGlinchey in representing a client in litigation against Thinkstream and Bellue. Although the matter before this court involves only the suit against McGlinchey, there were several other proceedings relevant to an understanding of the background of this suit.
The Request for Proposals
In July 2003, the Louisiana Commission on Law Enforcement and Administration of Criminal Justice (LCLE) issued a "Request for Proposals" (RFP) on behalf of the Louisiana Integrated Criminal Justice Information System (ICJIS) and its Policy Board (Board) for the development of a "comprehensive solution to provide Information sharing and data integration across the State's criminal justice community." According to the RFP, each proposal was to be reviewed and evaluated by an evaluation committee (committee). Each Individual committee member was to evaluate the technical sections of the written proposals in light of a set of criteria established by the RFP. The RFP further provided that contract negotiations would be initiated with the bidder whose proposal had received the highest score and was determined to be in the best interests of the state in light of the established criteria.
After the committee established by the Board completed its evaluation of the proposals, *1096 the pool of bidders was narrowed to three companies based on the average score assigned by the committee to each bidder. Based on these scores, Templar Corporation (Templar) was ranked first, and Thinkstream was ranked third. The top three bidders were invited to give oral presentations before the Board. After hearing the presentations, the Board awarded the contract to Thinkstream, despite the fact that Templar had been ranked first by the committee after it had applied the scoring methodology established by the RFP.
On April 9, 2004, Templar protested the award of the contract to Thinkstream by sending a letter to Michael Ranatza, the Executive Director of the LCLE, in accordance with LAC 34:V.145(8). On April 15, 2004, Mr. Ranatza denied the protest in writing. Shortly thereafter, Templar hired McGlinchey to appeal the denial of the protest, and on April 29, 2004, McGlinchey filed an appeal before the Commissioner of Administration (Commissioner) in accordance with LAC 34:V.145(11). In the petition of appeal, Templar generally contended that the Board had not properly followed the procedures established by the RFP in awarding the contract to Thinkstream. Templar further contended that the Board had improperly applied additional criteria, not established by the RFP, in awarding the contract. In addition, beginning with paragraph 30 of the appeal, Templar requested expedited discovery and an evidentiary hearing. Paragraph 32 of the appeal specifically stated:
Finally, Templar is entitled to expedited discovery to determine whether any Policy Board or the Commission members retained stock ownership in Thinkstream or participated in private meetings regarding Thinkstream, as the "IC-JIC Board Meeting Minutes" attached as Exhibit "8" indicate that Colonel Mike Barnett of the East Baton Rouge Parish Sheriff's Office held stock in Thinkstream.10 On information and belief a public request for disclosure of Thinkstream's stockholders has been made by the State prior to the release of the RFP.
Footnote 10 provided:
Templar is particularly I interested in this type of discovery due to the recent United States Senate Ethics Committee investigation of a complaint involving retiring Senator Ben Campbell and Thinkstream. In that regard, attached as Exhibit "9" is an article published April 16, 2004, in the Denver Post.
On May 4, 2004, counsel for Thinkstream wrote a letter to Mr. Rubin at McGlinchey, requesting that the appeal be amended to delete paragraph 32 and footnote 10. The letter further stated that counsel had been instructed by his client to file suit immediately to recover damages "for these unwarranted and untruthful allegations" if the requested amendments were not made. Accordingly, on May 5, 2004, McGlinchey filed a motion to amend the appeal petition. Attached to the motion was an amended petition of appeal that did not contain the allegedly offending paragraph and footnote.
On May 20, 2004, the Commissioner issued a ruling, concluding that the Board had not followed the procedures set forth by the RFP in awarding the contract. In so ruling, the Commissioner noted the Board's stated position that the committee acted only in a technical review capacity, and that the Board Itself was to act as the "evaluation committee" established by the RFP with full power to award the contract. However, the Commissioner concluded that there was no evidence that the Board members actually had performed the functions required of the "evaluation committee" by the RFP. Accordingly, the *1097 Commissioner vacated the award to Thinkstream and remanded the matter to the Board for further proceedings consistent with the RFP. Rather than award the contract after complying with the procedures established in the RFP, the Board simply abandoned the process and chose to use the funds set aside for the contract for another purpose.
Thinkstream v. Templar
Instead of instituting judicial action to challenge the decision of the Commissioner as authorized by LAC 34:V.145(11), Thinkstream filed suit against Templar on June 21, 2004, based upon Templar's successful appeal of the contract award. In the original petition, Thinkstream alleged that it had suffered tremendous economic damage as a result of Templar's "baseless, arbitrary, and capricious appeal." Thinkstream further alleged that Templar had: (1) intentionally and negligently made misrepresentations about Thinkstream; (2) intentionally and negligently interfered with contract or business relations; and (3) instituted legal proceedings for the sole purpose of delaying the awarding of the contract to Thinkstream until the time limitations of the award had expired or could not be met. Thinkstream also suggested in its petition that Templar had filed its appeal of the contract award at the request of a member of the Board.
In response, Templar filed peremptory exceptions pleading the objections of no cause of action and non-joinder of necessary parties. Before these exceptions were heard, however, Thinkstream amended its petition to add claims for defamation and alleged violations of the Louisiana Unfair Trade Practices Act.[1]
After a hearing, the trial court sustained the exceptions and granted Thinkstream fifteen days to amend its petition a second time or face dismissal, with prejudice. The trial court then granted two motions by Thinkstream, each seeking to stay the proceedings for sixty days, to allow Thinkstream an opportunity to retain new counsel and amend its petition. Thinkstream never properly amended its petition; thus, on Templar's motion, the trial court dismissed Thinkstream's suit, with prejudice, on February 15, 2005. Thinkstream subsequently filed a motion for new trial, which was denied by the trial court. Thinkstream then appealed the matter to this court. In an unpublished opinion, another panel of this court affirmed the judgment of the trial court, which dismissed the suit against Templar, with prejudice. Thinkstream, Inc. v. Templar, Inc., 05-1968 (La.App. 1st Cir.12/28/06), 947 So.2d 847 (table), writ denied, 07-0208 (La.3/23/07), 951 So.2d 1106.
*1098 Thinkstream v. Rubin
On June 7, 2005,[2] after the trial court had dismissed the suit against Templar, Thinkstream and Bellue filed this suit against McGlinchey, contending that McGlinchey had defamed them by making certain allegations in the appeal to the Commissioner of the Board's decision.[3] On November 3, 2005, McGlinchey filed a special motion to strike the cause of action pursuant to LSA-C.C.P. art. 971, along with a peremptory exception raising the objections of peremption, prescription, no cause of action, and no right of action.[4] These matters were set for hearing on Monday, January 23, 2006.
On Friday, January 20, 2006, Thinkstream and Bellue filed a combined motion and order for leave to amend their petition to assert additional claims against McGlinchey for abuse of process and conspiracy.[5] The plaintiffs further requested an expedited hearing on the issue of the amendment, contending that the trial court should allow them to amend their petition prior to hearing McGlinchey's objections and motion to strike.
At the hearing, the trial court decided that it would address the special motion to strike first. The court further determined that it would consider McGlinchey's peremptory exception next, followed by the plaintiffs' motion for leave to amend the petition. After considering the evidence submitted by the parties, the trial court granted the special motion to strike in open court. The court specifically found that the allegedly defamatory statements were made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, and that the statements were made in connection with an issue under consideration by a legislative, executive, or judicial body, or any other official body authorized by law. See LSA-C.C.P. art. 971(F)(1). The court further found that the plaintiffs failed to establish a probability of success on their claim. See LSA-C.C.P. art. 971(A). In determining that the plaintiffs had failed to meet their burden, the trial court concluded that the statements found in paragraph 32 of the original administrative appeal were not defamatory. In addition, the trial court determined that the plaintiffs' cause of action was perempted pursuant to LSA-R.S. 9:5605 and prescribed pursuant to LSA-C.C. art. 3492. The court further determined that an amendment would not cure these problems and denied plaintiffs' motion for leave to amend the petition.
On February 7, 2006, the trial court signed a judgment granting the special motion to strike and dismissing the plaintiffs' suit, with prejudice. The judgment further dismissed the defendants' peremptory *1099 exception as moot and stated that the defendants were entitled to reasonable attorney fees and costs pursuant to LSA-C.C.P. art. 971(B), in an amount to be determined by the court upon the filing of a rule to tax costs. Finally, the judgment denied the plaintiffs' motion for leave to amend the petition. It is from this judgment that the plaintiffs have appealed.

ANALYSIS
On appeal, Thinkstream and Bellue contend that the trial court erred: (1) by applying the one year peremption rule of LSA-R.S. 9:5605 to a non-client alleging an intentional tort; (2) by finding that the case was prescribed under LSA-C.C. art. 3492; (3) by finding that the statements attributed to McGlinchey did not constitute actionable defamation; (4) by not addressing plaintiffs' proposed amendment to the pleadings before taking up and ruling on McGlinchey's special motion to strike under LSA-CCP. art. 971, including the request for attorney fees and costs; and (5) by finding that the plaintiffs did not make the requisite showing of a probability of success on the intentional tort claim against McGlinchey.
Special Motion to Strike
The special motion to strike is governed by LSA-CCP. art. 971, which provides:
A. (1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.
(2) In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.
(3) If the court determines that the plaintiff has established a probability of success on the claim, that determination shall be admissible in evidence at any later stage of the proceeding.
B. In any action subject to Paragraph A of this Article, a prevailing party on a special motion to strike shall be awarded reasonable attorney fees and costs.
C. The special motion may be filed within sixty days of service of the petition, or in the court's discretion, at any later time upon terms the court deems proper. The motion shall be noticed for hearing not more than thirty days after service unless the docket conditions of the court require a later hearing.
D. All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this Article. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. Notwithstanding the provisions of this Paragraph, the court, on noticed motion and for good cause shown, may order that specified discovery be conducted.
E. This Article shall not apply to any enforcement action brought on behalf of the state of Louisiana by the attorney general, district attorney, or city attorney acting as a public prosecutor.
F. As used in this Article, the following terms shall have the meanings ascribed to them below, unless the context clearly indicates otherwise:
(1) "Act in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue" includes but is not limited to:
(a) Any written or oral statement or writing made before a legislative, executive, *1100 or judicial proceeding, or any other official proceeding authorized by law.
(b) Any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official body authorized by law.
(c) Any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest.
(d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.
(2) "Petition" includes either a petition or a reconventional demand.
(3) "Plaintiff" includes either a plaintiff or petitioner in a principal action or a plaintiff or petitioner in reconvention.
(4) "Defendant" includes either a defendant or respondent in a principal action or a defendant or respondent in reconvention.
The granting of a special motion to strike presents a question of law. Appellate review regarding questions of law is simply a review of whether the trial court was legally correct or legally incorrect. Lamz v. Wells, 05-1497 (La.App. 1st Cir.6/9/06), 938 So.2d 792, 795. On legal issues, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and renders judgment on the record. Id.
Louisiana Code of Civil Procedure article 971 was enacted by 1999 La. Acts, No. 734, § 1. Section 2 of the Act provides:
The legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances. The legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, it is the intention of the legislature that the Article enacted pursuant to this Act shall be construed broadly.
Hence, Article 971 was enacted by the legislature as a procedural device to be used in the early stages of litigation to screen out meritless claims brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances. Aymond v. Dupree, 05-1248 (La.App. 3rd Cir.4/12/06), 928 So.2d 721, 727, writ denied, 06-1729 (La.10/6/06), 938 So.2d 85.
Pursuant to Article 971, a cause of action against a person arising from any act in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim. LSA-C.C.P. art. 971(A)(1). Under the shifting burdens of proof established by the article, the mover must first establish that the cause of action against him arises from an act by him in the exercise of his right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue. If the mover satisfies this initial burden of proof, the burden then shifts to the plaintiff to demonstrate a probability of success on the claim. Aymond, 928 So.2d at 727.
In the present case, it is undisputed that the cause of action against McGlinchey arose from an act by McGlinchey in furtherance of the right of petition or free speech, as the defendants made the allegedly *1101 defamatory statements in the original appeal they filed with the Commissioner on behalf of Templar. As such, the allegedly defamatory comments were written statements made in connection with an issue under consideration or review by an executive or a judicial body, or any other official body authorized by law. See LSA-C.C.P. art. 971(F)(1)(b). Once defendants met their initial burden of proof, the burden shifted to Thinkstream and Bellue to establish the probability of success on their claim against McGlinchey through the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.
Defamation
A cause of action for defamation arises out of a violation of LSA-C.C. art. 2315. Defamation involves the invasion of a person's interest in his or her reputation and good name. Fitzgerald v. Tucker, 98-2313 (La.6/29/99), 737 So.2d 706, 715. To maintain an action for defamation, plaintiffs have the burden of proving: (1) defamatory words; (2) unprivileged publication; (3) falsity; (4) actual or implied malice; and (5) resulting Injury. Lamz, 938 So.2d at 797. If even one of these required elements is lacking, the cause of action fails. Costello v. Hardy, 03-1146 (La.1/21/04), 864 So.2d 129, 140.
Defamatory words are those that harm the reputation of another so as to lower him in the estimation of the community or to deter others from associating with him. Lamz, 938 So.2d at 798. Words that convey an element of personal disgrace, dishonesty, or disrepute are defamatory. Fitzgerald, 737 So.2d at 716. The question of whether a communication is capable of a particular meaning and whether that meaning is defamatory is ultimately a legal question for the court. Costello, 864 So.2d at 140. The question is answered by determining whether a listener could have reasonably understood the communication, taken in context, to have been intended in a defamatory sense. Id.
In this matter, the trial court determined that the statements in paragraph 32 of Templar's appeal to the Commissioner were not defamatory. Based upon our review of the record and the specific statements contained in paragraph 32, we agree with the trial court's conclusion. Although plaintiffs insist that the statements accuse them of bribing public officials and other potentially criminal activities, our reading of the statements does not support such an interpretation. A fair reading of the statements supports the defendants' position that they were attempting to obtain discovery concerning the identities of Thinkstream's stockholders, as well as the criteria applied by the Board in awarding the contract.[6]
Furthermore, we note that the plaintiffs failed to carry their burden of proof with regard to the malice element of a cause of action for defamation. Malice, for purposes of the tort of defamation, is a lack of reasonable belief in the truth of the allegedly defamatory statement. See Costello, *1102 864 So.2d at 143. Only when it is found that a statement has been made without reasonable grounds for believing it to be true can the person making the statement be found to be motivated by malice or ill will. Redmond v. McCool, 582 So.2d 262, 265 (La.App. 1st Cir.1991). In this matter, the evidence demonstrates that the statements made in the appeal to the Commissioner were supported by publicly available sources, including the minutes of a Board meeting and an article in the Denver Post. Moreover, McGlinchey removed the offending statements within one day after counsel for Thinkstream demanded their removal. Accordingly, we conclude that the record is devoid of any evidence of ill will or malice on the part of McGlinchey against the plaintiffs.[7] Thus, plaintiffs did not and cannot establish a probability of success on their claim. In the absence of the establishment of a probability of success by the plaintiffs, the cause of action shall be subject to the special motion to strike. Therefore, the trial court did not err in granting the motion.
Amendment of the Petition
Plaintiffs also contend on appeal that the trial court erred in not allowing them to amend their petition prior to deciding the issue of McGlinchey's special motion to strike. As a preliminary matter, we note that trial courts are vested with great discretion in determining the order in which they will handle matters on their dockets. Appellate courts interfere in trial court matters such as control of a docket, case management, and determination of whether a continuance should be granted only with reluctance and in extreme cases. Perkins v. Willie, 01-0821 (La.App. 1st Cir.2/27/02), 818 So.2d 167, 169. After a review of the attendant circumstances, we find that the trial court did not abuse its discretion in its determination of the special motion to strike first.
Plaintiffs argue that they have a statutory right to amend their lawsuit to correct defects in the pleadings pursuant to LSA-C.C.P. arts. 932(A) and 934. It is true that these articles authorize a plaintiff to amend his petition when the grounds of the objections raised by the declinatory and peremptory exceptions may be removed by such an amendment However, these articles apply to declinatory and peremptory exceptions only, and they make no reference whatsoever to the special motion to strike. Because the trial court, in its discretion, chose to hear the special motion to strike before the peremptory exception, the above articles are simply not applicable. Moreover, we note that even if these articles were applicable to this matter, Articles 932(A) and 934 only require that the plaintiff be granted an opportunity to amend when such an amendment would cure the objections raised in the exceptions. The trial court specifically found that the plaintiffs' suit was prescribed and that an amendment would not cure the objections.
*1103 The evidence in the record is clear that Bellue and Thinkstream were aware of the allegedly defamatory statements for more than one year prior to the date they filed suit against McGlinchey. On May 4, 2004, counsel for Thinkstream sent a letter to McGlinchey requesting that it remove the "unwarranted and untruthful" allegations of paragraph 32 and footnote 10 of the original appeal petition. In addition, on May 20, 2004, Bellue wrote a letter to the Commissioner concerning the "very damaging and slanderous statements about the management of Thinkstream" contained in the original appeal petition. Thus, there is no dispute that Thinkstream and Bellue were aware of the allegedly defamatory statements no later than May 20, 2004.
Nevertheless, Thinkstream and Bellue did not file suit against McGlinchey until June 7, 2005. Plaintiffs contend that the suit is timely, relying on the general rule that an action for defamation arising out of allegations made in judicial proceedings and against a party to those proceedings cannot be brought until those proceedings are terminated. See Simpson v. Perry, 03-0116 (La.App. 1st Cir.7/14/04), 887 So.2d 14, 16. Plaintiffs state that they did not receive notice of the Commissioner's decision granting the appeal until June 7, 2004; thus, they contend that this suit is timely, since it was filed within one year of that date. We disagree.
In general, the reason for the above rule requiring the termination of the underlying litigation is to allow the underlying litigation to proceed in an orderly fashion, without the issue of defamation present. Id. Another reason is that the cause of action does not arise until the party making the allegations has had the opportunity of proving the truth of the allegations in the proceedings in which they are made. Loew's, Inc. v. Don George, Inc., 237 La. 132, 110 So.2d 553, 561 (1959). In this matter, however, the allegedly defamatory statements were removed on May 5, 2004, only one day after counsel for Thinkstream requested their removal. At that point, the statements were no longer a part of the underlying litigation; thus, prescription began to run on the defamation claim at that time.[8] Accordingly, plaintiffs' suit, filed more than one year later, was untimely pursuant to LSA-C.C. art. 3492.[9] Furthermore, because the original suit was untimely, any proposed amendment to the suit arising out of the same transaction or occurrence also would be untimely. Therefore, allowing the plaintiffs to amend their original untimely petition would serve no purpose.[10]

*1104 CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to plaintiffs, Thinkstream, Inc. and Barry Bellue.
AFFIRMED.
McCLENDON, J., concurs and assigns reasons.
McCLENDON, J., concurs.
I concur in the result reached by the majority, finding the plaintiffs' claims to be prescribed.
NOTES
[1] Paragraph 22 of the first amended petition raises allegations concerning the statements made in the original appeal to the Commissioner and states:

The actions of Templar, since the original awarding of the contract, including the baseless, arbitrary, and capricious appeal, the intentional and/or negligent misrepresentations concerning Thinkstream's financial information, the allegations in Templar's appeal to the Division of Administration of private meetings between Thinkstream and the ICJIS Policy Board members while bid evaluations were taking place, and allegations of Thinkstream's illegal influencing of ICJIS Policy Board voters by numerous methods, including bribery and stock ownership made by Templar after the original awarding of the contract, In addition to the purposeful delaying of the award until after the expiration of the practical time limitations of the federal grant, constitute defamatory actions, violations of unfair trade and practices violating the Louisiana Unfair Trade Practices Act, and intentional and negligent interference with contractual and business relations causing tremendous economic damage to Thinkstream, relating to both the awarding of this particular contract and to other law enforcement contracts.
[2] On this date, Thinkstream and Bellue also filed a complaint in the federal district court for the middle district of Louisiana. In this complaint, the plaintiffs asserted claims under 42 U.S.C.A. § 1983 against various defendants, including certain members of the Board. These claims were subsequently dismissed, with prejudice, by the federal district court. Thinkstream, Inc. v. Adams, 05-844JJB (M.D.La.2006) (unpublished).
[3] In the petition, plaintiffs requested that service on the defendants be held until further notice. Plaintiffs finally requested service on McGlinchey by letter dated September 1, 2005.
[4] In support of the spedal motion to strike, McGlinchey relied on many of the same arguments raised in support of the peremptory exception.
[5] With the proposed amendment, plaintiffs made allegations suggesting that Templar's appeal had been filed at the suggestion of certain members of the Board. As noted above, Thinkstream made similar allegations In Its earlier suit against Templar.
[6] In their brief to this court, the defendants contend that the statements made in the appeal to the Commissioner are protected by a qualified privilege. Statements made in the course of a judicial proceeding are subject to a qualified privilege if the statements are material to the proceeding and are made with probable cause and without malice. Freeman v. Cooper, 414 So.2d 355, 359 (La.1982). However, the existence of a qualified privilege is an affirmative defense that must be specially pled. See Kennedy v. Sheriff of East Baton Rouge, 05-1418 (La.7/10/06), 935 So.2d 669, 682; LSA-C.C.P. art. 1005. Because McGlinchey did not file an answer to the plaintiffs' petition, the issue of qualified privilege has not yet been specially pled by the defendants or addressed by the trial court. Accordingly, that issue is not property before us at this time.
[7] Plaintiffs have argued that McGlinchey was Involved in a conspiracy with members of the Board and Templar in an effort to prevent Thinkstream from receiving the contract from the Board. Although the plaintiffs attempted to introduce evidence to support this claim in the trial court and have continued to make the argument on appeal, the actions allegedly supporting the existence of the conspiracy were actions taken by Templar and certain Board members before the defendants were involved in the matter. The plaintiffs have attempted to attribute these actions to McGlinchey, but such attribution is based only on inference and innuendo. Plaintiffs have provided absolutely no evidence to support their claim that the defendants were involved in a conspiracy, if any such conspiracy existed.
[8] We note that Thinkstream brought very similar defamation claims against Templar within two weeks of receipt of the Commissioner's decision granting the appeal, and that it was only when that suit was dismissed by the trial court that Thinkstream and Bellue sought to file the instant suit against McGlinchey.
[9] Because we find that the matter is prescribed, we do not address the question of whether the peremptive period provided by LSA-R.S. 9:5605 is applicable to this matter.
[10] Plaintiffs filed a motion for leave to amend their petition in the trial court. However, In oral argument before this court, the plaintiffs suggested that the trial court's permission was not needed, because the defendants had not yet filed an answer at the time of the hearing. Pursuant to LSA-C.C.P. art. 1151, a plaintiff may amend his petition without leave of court at any time before the answer thereto is served. In response, defendants have contended that the plaintiffs should not be allowed to amend their petition for any reason once a special motion to strike has been filed. However, because we have found that any amendment to the petition would be untimely since the original petition is prescribed, we need not address these arguments.