# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #050

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **18th day of October, 2017**, are as follows:

**BY GUIDRY, J.**:

2017-CC-0482        PHILIP SHELTON v. NANCY PAVON (Parish of Orleans)

After reviewing the applicable law, we hold that La. Code Civ. Pro. art. 971(F)(1)(a), which states that "[a]ny written or oral statement or writing made before a legislative, executive, or judicial body" is an "[a]ct in furtherance of a person's right of petition or free speech … in connection with a public issue," must nonetheless satisfy the requirement of La. Code Civ. Pro. art. 971(A)(1), that such statements be made "in connection with a public issue…." We therefore conclude the court of appeal was correct in reversing the trial court's ruling granting Dr. Shelton's special motion to strike, and in awarding reasonable attorney fees and costs to Ms. Pavon as the prevailing party, to be determined by the trial court on remand. Accordingly, the judgment of the court of appeal is affirmed.
AFFIRMED

WEIMER, J., dissents and assigns reasons.
CLARK, J., dissents for the reasons given by Justice Weimer.
HUGHES, J., dissents with reasons.
CRICHTON, J., additionally concurs and assigns reasons.

SUPREME COURT OF LOUISIANA

No. 2017-CC-0482

PHILIP SHELTON

VERSUS

NANCY PAVON

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FOURTH CIRCUIT, PARISH OF ORLEANS

**GUIDRY, Justice**

We granted the writ application to determine whether the court of appeal erred in reversing the trial court's ruling granting the plaintiff's special motion to strike defendant's reconventional demand for defamation, pursuant to La. Code Civ. Pro. art. 971, the so-called anti-SLAPP statute, where the appellate court found that plaintiff's petition did not involve a "public issue." For the reasons expressed below, we find the court of appeal was correct in reversing the trial court's ruling. We hold that La. Code Civ. Pro. art. 971(F)(1)(a), which states that "[a]ny written or oral statement or writing made before a legislative, executive, or judicial body" is an "[a]ct in furtherance of a person's right of petition or free speech … in connection with a public issue," must nonetheless satisfy the requirement of La. Code Civ. Pro. art. 971(A)(1), that such statements be made "in connection with a public issue…."

FACTS AND PROCEDURAL HISTORY

Philip Shelton, M.D. (hereinafter "Dr. Shelton") married Judith Shelton (hereinafter "Mrs. Shelton") in 2001. During their marriage, the couple each owned a life insurance policy that named the other as the beneficiary. At some point, Mrs. Shelton was diagnosed with cirrhosis of the liver and Hepatorenal Syndrome (rapid deterioration of kidneys) as a result of alcoholism. In July 2011, Mrs. Shelton was

admitted to Ochsner Baptist Medical Center for treatment and was soon discharged to Woldenberg Village, an inpatient assisted living facility. Mrs. Shelton died on December 31, 2011, at the age of 64.

After Mrs. Shelton's death, Dr. Shelton learned that, in July 2011, she had changed her beneficiary to her personal assistant/paralegal/friend, Nancy Pavon. In November 2013, Dr. Shelton filed a Petition to Nullify Change of Beneficiary. He alleged Mrs. Shelton had lacked the capacity to execute a change of beneficiary form due to her poor health, including dementia, confusion, disorientation, and personality changes. Alternatively, he alleged Mrs. Shelton's signature on the change of beneficiary form was a forgery or had been obtained through undue influence by Ms. Pavon.

In response, Ms. Pavon filed an answer and reconventional demand alleging Dr. Shelton's petition constituted defamation *per se*. In response, Dr. Shelton filed a Special Motion to Strike pursuant to La. Code Civ. Pro. art. 971. Ms. Pavon opposed the motion to strike, arguing that it should be dismissed as a matter of law because Dr. Shelton's petition to nullify did not involve a public issue. She also argued that a motion to strike was not the proper mechanism to dismiss her defamation claim.

After a hearing and taking the matter under advisement, the trial court granted Dr. Shelton's special motion to strike. The trial court reasoned that, under La. Code Civ. Pro. art. 971(A)(1), the moving party must first satisfy the burden of proof that the "cause of action against [the moving party] arise[s] from any act of that person in furtherance of his right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue…." Thus, the trial court noted it must first consider whether Dr. Shelton's action, that is, the petition to nullify change of beneficiary, arises from an act in the exercise of his right of petition or free speech in connection with a public issue. The trial court concluded Dr.

2

Shelton's petition fell into the category of such "acts" as defined in La. Code Civ. Pro. art. 971(F)(1)(a), because it is a "written … statement or writing made before a … judicial proceeding." The trial court then noted that pursuant to Article 971(A)(1) the burden shifted to the non-mover, Ms. Pavon, to show a probability of success on her claim for defamation. The trial court ultimately concluded she could not. The trial court then awarded attorney fees to Dr. Shelton as the prevailing party on the motion, pursuant to La. Code Civ. Pro. art. 971(B).

Ms. Pavon sought review in the court of appeal, which ultimately reversed the trial court's ruling. The court of appeal observed that the trial court was correct in first determining whether Dr. Shelton's petition to nullify the change of beneficiary constituted an act in furtherance of his right to petition in connection with a public issue. However, the court of appeal disagreed with the trial court's conclusion that Dr. Shelton met his prima facie burden under Article 971. The court of appeal found the language of Article 971(F)(1)(a) was ambiguous because it was susceptible to different meanings. Relying on the Fifth Circuit's decision in *Yount v. Handshoe*, 14-919 (La. App. 5 Cir. 5/28/15), 171 So.3d 381, *writ denied*, 15-2302 (La. 2/19/16), 187 So.3d 462, the court of appeal held that, in light of the legislative history, relevant case law, and the statutory language as a whole, La. Code Civ. Pro. art. 971(F)(l)(a) requires the statements made in a judicial proceeding be made in connection with a public issue. *Shelton v. Pavon*, 16-0758 (La. App. 4 Cir. 2/15/17), 212 So.3d 603. The court of appeal concluded Dr. Shelton's petition was not an exercise of his right of petition in connection with a public issue.

Dr. Shelton sought writs in this court, asserting the Fourth Circuit's decision was in conflict with rulings from the First, Second, and Third Circuits. He cited, among others, *Gibbs v. Elliott*, 12-212 (La. App. 1 Cir. 09/13/13), 186 So.3d 667;

3

*Jones v. Delta Fuel Co.*, 48885 (La. App. 2 Cir. 05/28/14), 141 So.3d 352; and

*Jeansonne v. Roy*, 13-741 (La. App. 3 Cir. 03/05/14), 156 So.3d 134, 142, *reversed in part*, 14-0729 (La. 6/30/14), 147 So.3d 1116), all of which held that pleadings filed into the record of a judicial proceeding fall within the definition of "[a]n act in furtherance of the person's right of petition or free speech" as contemplated by Article 971(F)(1)(a). We granted Dr. Shelton's writ application to resolve a conflict in the circuits. *Shelton v. Pavon*, 17-0482 (La. 2/15/17), 212 So.3d 603.

LAW and DISCUSSION

Resolving this conflict requires us to interpret Article 971, and so we begin with the language of the statute itself. *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 07–2371 (La. 07/01/08), 998 So.2d 16, 27). "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. Civ. Code art. 9. "When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." La. Civ. Code art. 10. Generally, words are given their prevailing meaning, but "when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole." La. Civ. Code arts. 11 and 12.

Louisiana Code of Civil Procedure Article 971 provides in pertinent part:

A. (1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.

(2) In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

4

(3) If the court determines that the plaintiff has established a probability of success on the claim, that determination shall be admissible in evidence at any later stage of the proceeding.

B. In any action subject to Paragraph A of this Article, a prevailing party on a special motion to strike shall be awarded reasonable attorney fees and costs.

\* \* \*

C. All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this Article. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. Notwithstanding the provisions of this Paragraph, the court, on noticed motion and for good cause shown, may order that specified discovery be conducted.

\* \* \*

F. As used in this Article, the following terms shall have the meanings ascribed to them below, unless the context clearly indicates otherwise:

(1) "Act in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue" includes but is not limited to:

(a) Any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law.

(b) Any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official body authorized by law.

(c) Any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest.

(d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Our appellate courts interpret this statute as requiring a two-part, burden-shifting analysis, which the trial court had in fact performed. *See, e.g., Thomas v. City of Monroe Louisiana,* 36,526 (La. App. 2 Cir. 12/18/02), 833 So.2d 1282; *Aymond v. Dupree,* 05–1248 (La. App. 3 Cir. 04/12/06), 928 So.2d 721. In cases where right of petition and free speech activities form the basis of the claims, the mover must first establish that the cause of action against him arises from an act by

5

him in the exercise of his right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue. La. Civ. Code Pro. art. 971(A)(1); *Yount v. Handshoe*, 14-919, pp. 6-7, 171 So.3d at 385-86; *Thinkstream, Inc. v. Rubin,* 06–1595 p. 9 (La. App. 1 Cir. 09/26/07), 971 So.2d 1092, 1100, *writ denied,* 07–2113 (La.1/7/08), 973 So.2d 730. If the mover makes a *prima facie* showing that his comments were constitutionally protected and in connection with a public issue, the burden shifts to the plaintiff to demonstrate a probability of success on the claim. *Id.* In cases where more than one claim is alleged in the petition, the courts examine the probability of success of each claim individually. *Darden v. Smith,* 03–1144 p. 8 (La. App. 3 Cir. 06/30/04), 879 So.2d 390, 397, *writ denied*, 04-1955 (La 11/15/04), 887 So.2d 480; *Melius v. Keiffer,* 07–0189 p. 5 (La. App. 4 Cir. 03/12/08), 980 So.2d 167, 172, *writ not considered*, 08-1039 (La. 8/29/08), 989 So.2d 90. If the plaintiff can demonstrate a probability of success on any of his claims, then the special motion to strike must fail. *Darden, supra.*

Dr. Shelton contends the court of appeal's ruling departs from the rules of statutory interpretation, citing La. Civ. Code art. 10, because it does not conform to the purpose of the law. In his view, Article 971(F)(1) sets forth specific examples of what the legislature meant by an "act in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue," expressly providing that such acts include:

> (a) Any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law.

> (b) Any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official body authorized by law.

Applying the article's plain and unambiguous language to this case, and adhering to the legislature's express intent in La. Acts 1999, No. 734, § 2 that Article

6

971 be broadly construed, Dr. Shelton argues his Petition to Nullify Change of Beneficiary and his allegations of forgery and undue influence on the part of Ms. Pavon constitute written statements before a judicial proceeding as defined in Article 971(F)(1)(a). He contends Ms. Pavon's defamation claim against him thus arises from the allegations set forth in his petition, and, therefore, Ms. Pavon's defamation claim is subject to a special motion to strike under Article 971. However, he claims the court of appeal's opinion rewrites the law, because the court concluded that La. Code Civ. Pro. art. 971(F)(l)(a) requires the statements made in a judicial proceeding be made in connection with a public issue. Dr. Shelton asserts this interpretation effects a change in the law.

Ms. Pavon supports the ruling of the Fourth Circuit below, which properly resorted to this court's rules of statutory interpretation after determining the language of La. Code Civ. Pro. art. 971 is ambiguous and its application leads to absurd consequences. Ms. Pavon asserts the lower court correctly found that Article 971 (F)(1)(a) was ambiguous, that reading it broadly to apply to any act in furtherance of one's right of petition leads to absurd results, and that it was therefore superseded by the operative clause of Article 971, namely subparagraph 971(A)(1), which mandates that the act in furtherance of the person's right of petition or free speech must be made in connection with a public issue. She also points out that the Fifth Circuit in *Yount* similarly held that Article 971(F)(1)(b) was ambiguous and leads to absurd consequences and was therefore subject to the operative clause of Article 971(A)(1).

The parties have correctly noted that Article 971(F)(1)(a) defines an act in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue as "[a]ny written or oral

7

statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law." As observed by the Fourth and Fifth Circuits, though the latter with regard to Article 971(F)(1)(b), this language can be read to provide that a special motion to strike will apply to *any* issue brought before a judicial proceeding, because it was made in furtherance of the person's right of petition. On the other hand, Article 971(F)(1)(a) may as easily be interpreted to mean that a special motion to strike will apply *only* to statements or writings before a judicial proceeding in connection with a *public issue*. Clearly there is ambiguity in this language given that all five of our circuit courts have reviewed and interpreted this language, with two circuits adopting the latter view, and three circuits adopting the former.

Ultimately, pursuant to our duty to resolve such impasses, we agree that a reading of the statute to apply to any issue made before a judicial proceeding, without a requirement that it be connected to a public issue, can lead to absurd results. As the *Yount* court explained with regard to La. Code Civ. Pro. art. 971(F)(1)(b), which is analogous, under such an interpretation "*any* cause of action arising from *any* written or oral statement made in connection with *any* kind of government activity or proceeding would be subject to special motions to strike regardless of whether or not the statements were made in connection with a public issue." *Yount*, 14–919, p. 8, 171 So.3d at 387. Interpreting subsection (F)(1)(b), the *Yount* court concluded that "any party could defame or invade the privacy of a person involved in a divorce proceeding, traffic violation, child custody dispute, marriage, mortgage registration, passport application, or driver's license renewal and be immunized from legal repercussions of damage to others through the use of an extraordinary procedural remedy." *Id.*, 14–919, p. 8–9, 171 So.3d at 387. That same logic applies to subsection (F)(1)(a), as the court below found.

8

We nevertheless acknowledge the views of the other circuits. The First Circuit in *Gibbs v. Elliott*, for example, found that the plain language of Article 971(F)(1)(a) and (b) provides that an act "in connection with a public issue" includes by definition "[a]ny written ... statement or writing made before a ... judicial proceeding" or "made in connection with an issue under consideration or review by a ... judicial body." *Gibbs,* 12-2121, p. 6, 186 So.3d at 672. In *Gibbs*, a plaintiff's defamation suit was dismissed pursuant to a special motion to strike under La. Code Civ. Pro. art. 971. The defamation suit in *Gibbs* was based on allegations made against Gibbs in a succession matter, wherein it was alleged that Gibbs had engaged in efforts to transfer assets for purposes of evading judgment creditors. In dismissing Gibbs's claim, the First Circuit reviewed the assignment of error that the Article 971 special motion to strike should have been denied because the alleged defamatory statements did not arise out of a matter of public significance, but rather was related to a dispute between private parties. The First Circuit court declined to interpret the provisions of La. Code Civ. Pro. art. 971(F)(1)(a) and (b) as requiring statements made before a judicial proceeding or in connection with an issue under consideration or review by a judicial body must also be related to matters "in connection with a public issue." *Ibid.*

The First Circuit recently upheld its view, disagreeing with the Fifth Circuit's holding in *Yount. See Aloise v. Capital Management Consultants, Inc.*, 16-1174 (La. App. 1 Cir. 4/12/17), 2017 WL 1378223.[1] The *Aloise* court disagreed with *Yount* that, unless the provisions of Article 971(F)(1)(a) and (b) were interpreted as requiring statements made in judicial proceedings to also be made in connection with a public issue, any party could defame the privacy of a person in a variety of

---

[1] A writ application is currently pending in this court: *Aloise v. Capital Management Consultants, Inc.*, No. 2017-C-0784, filed on May 12, 2017.

9

situations. In the *Aloise* court's view, Article 971 was enacted by the legislature as a procedural right to be used in the early stages of litigation to screen out meritless claims bought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances. 16-1174, p. 8, ___ So.3d ___, citing *Thinkstream,* 971 So.2d at 1100.

There is some support for that view in the language of Article 971(A), which limits the special motion to strike only to a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech…." Defamation suits, when filed against a petitioner who has alleged fraud or the like, as in this case, clearly seem to fall within the rubric of suits intended to chill the litigant's right of free speech and right to petition for redress of grievances. As the concurring judge in *Aloise* pointed out: "Articles 971(F)(1)(a) and (b) statutorily define a protected act to include statements made before a judicial proceeding or in connection with an issue under consideration by a judicial body— that is, statements made during the course of litigation or in connection with an issue under consideration in litigation. So, it appears that the right to litigate is in itself a matter of public concern." *Aloise, supra*, McDonald, J., concurring.

Given the competing viewpoints among our lower courts as to how to interpret the plain language of the statute,[2] it is no surprise that there is similarly a divergence of views on what the legislature intended. As La. Civ. Code art. 10 instructs, when the language of the law is susceptible to different meanings, we must interpret the law as having the meaning that best conforms to the purpose of the law.

The *Yount* court examined the history of Article 971, which evolved from Louisiana's Anti-SLAPP statute:

---

[2] The federal district court has recently agreed with *Yount's* reasoning in *Schmidt v. Cal–Dive International, Inc.,* 183 F.Supp.3d 784 (W.D. La. 2016).

Code of Civil Procedure Article 971 is Louisiana's Anti–SLAPP statute. 'SLAPP' is an acronym for Strategic Lawsuit Against Public Participation, a term first coined by Professors George W. Pring and Penelope Canan to describe generally meritless suits brought by large private interests to deter common citizens from exercising their constitutional right to petition or to punish them for doing so. Pring, *SLAPPs: Strategic Lawsuits Against Public Participation,* 7 Pace Envtl. L.Rev. 3 (1989). Courts have difficulty identifying these suits which masquerade as ordinary lawsuits, most often in the form of defamation or a business tort. *Id.* SLAPP suits consist of a civil complaint or counterclaim (for monetary damages and/or injunction) filed against non-governmental individuals and/or groups because of their communications to a government body, or the electorate on an issue of some public interest or concern. *Id.* Typical examples of SLAPP suits include cases brought by 1) police, teachers, and other public officials and employees against their critics; 2) landlords against tenants reporting problems to the city health inspectors; 3) businesses against consumers reporting problems with their products or services; and 4) by dumps, toxic waste incinerators, bars, and other less-than-attractive enterprises against their NIMBY ("Not–In–My–BackYard") homeowner opponents. *Id.* At their heart, SLAPP suits threaten a citizen's right to petition because the mere filing of the suit limits public participation in the political process.

In response to the growing prevalence of such suits and recognizing that traditional legal remedies such as abuse of process or malicious prosecution claims and motions for summary judgment were inadequate tools to ameliorate the problem, states enacted legislation creating the special motion to strike. This extraordinary procedural remedy limits discovery, dismisses meritless claims quickly, and awards attorney's fees to the prevailing party. California was the first state to adopt an anti-SLAPP statute in 1992, followed by many other states, including Louisiana in 1999 with Act 734.

*Yount*, pp. 9-10, 171 So.3d at 387-88 (footnotes omitted).

The legislature expressly stated its intent behind Article 971: "The legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances. The legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and this participation should not be chilled through abuse of judicial process. To this end, it is the intention of the legislature that the Article enacted pursuant to this Act shall be construed broadly." 1999 La. Acts 734, § 2. The

11

legislature thus expressed its desire to encourage participation in matters of public significance, which suggests Article 971 is intended to protect statements made in connection with public rather than private issues under consideration by a government body. The *Yount* court resourcefully collected and reviewed Louisiana cases to demonstrate the types of issues that would be protected under the special procedures of Article 971, noting that suits involving private disputes between private parties have generally been found to fall outside the ambit of Article 971. *Yount*, pp. 11-12, 171 So.3d at 388-89.

Having completed our review, and giving due respect to our colleagues on the appellate courts, we must conclude that La. Code Civ. Pro. art. 971(F)(1)(a) applies to any written or oral statement made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, so long as it is made "in connection with a public issue." In *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983), the United States Supreme Court described speech on matters of public concern as speech "relating to any matter of political, social, or other concern to the community."

With regard to the merits of the dispute before us, the court of appeal correctly found that Dr. Shelton's petition to nullify a change in beneficiary to his wife's life insurance policy is a private dispute involving private parties, and not a matter of public concern or significance. Therefore, Dr. Shelton did not satisfy his initial burden of demonstrating that his petition is an act in furtherance of his right of petition "in connection with a public issue" as required by Article 971(A)(1).

Finally, the court of appeal in this case awarded reasonable attorney fees and costs to Ms. Pavon as the prevailing party pursuant to La. Code Civ. Pro. art. 971(B), to be determined by the trial court on remand. Dr. Shelton asserts in this court that the court of appeal erred in awarding Ms. Pavon attorney fees and costs as the

12

prevailing party under La. Code Civ. Pro. art. 971(B), citing this court's decision in *Jeansonne v. Roy*, 14-0729 (La. 6/30/14), 147 So.3d 1116, and arguing the trial court had properly granted his special motion to strike. Ms. Pavon distinguishes *Jeansonne*, arguing this court reversed the award of attorney fees in *Jeansonne* because the appellate court itself had fixed the amount rather than remanding the matter to the district court for it to determine reasonable attorney fees and costs.

We do not find *Jeansonne* necessarily instructive on this issue. There, the plaintiff sued an attorney and a funeral home alleging the attorney, by misleading the court, had improperly orchestrated an exhumation of the plaintiff's daughter for an autopsy. The trial court sustained the defendant attorney's exception of no cause of action, but denied the defendant attorney's Article 971 special motion to strike the allegations against him and accompanying request for attorney fees. The court of appeal affirmed the trial court's ruling sustaining the exception of no cause of action, but reversed the trial court's denial of the special motion to strike and awarded attorney fees in the amount $2500. This court denied the plaintiff's writ application, but granted the application in part to reverse the award of attorney fees, stating the court of appeal had erred in awarding attorney fees pursuant to Article 971. Because the *Jeansonne* court did not explain the basis of its ruling, we find it of little value as to whether attorney fees in the instant case were properly awarded by the court of appeal, to be determined on remand by the trial court.

In the instant case, Dr. Shelton filed a special motion to strike Ms. Pavon's allegations against him; the trial court granted Dr. Shelton's motion and awarded him attorney fees and costs. The appellate court reversed that ruling, finding that Dr. Shelton had not met his initial burden of proof because the statements in question were not made in furtherance of his right to petition in connection with a public issue. *Shelton v. Pavon*, 16-0758, p. 11, 212 So.3d at 611 Other than citing

13

*Jeansonne* and arguing that he should have prevailed, Dr. Shelton makes no other argument in his brief regarding attorney fees and costs. Accordingly, we decline to review the matter further. Because Ms. Pavon was ultimately "a prevailing party" on the Article 971 special motion to strike, we find the court of appeal correctly awarded her reasonable attorney fees and costs, to be determined by the trial court on remand. *See Yount*, p. 14, 171 So.3d at 390.

CONCLUSION

After reviewing the applicable law, we hold that La. Code Civ. Pro. art. 971(F)(1)(a), which states that "[a]ny written or oral statement or writing made before a legislative, executive, or judicial body" is an "[a]ct in furtherance of a person's right of petition or free speech … in connection with a public issue," must nonetheless satisfy the requirement of La. Code Civ. Pro. art. 971(A)(1), that such statements be made "in connection with a public issue…." We therefore conclude the court of appeal was correct in reversing the trial court's ruling granting Dr. Shelton's special motion to strike, and in awarding reasonable attorney fees and costs to Ms. Pavon as the prevailing party, to be determined by the trial court on remand. Accordingly, the judgment of the court of appeal is affirmed.

**AFFIRMED**

# SUPREME COURT OF LOUISIANA

## NO. 2017-CC-0482

## PHILIP SHELTON

### VERSUS

## NANCY PAVON

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,*
*FOURTH CIRCUIT, PARISH OF ORLEANS*

**WEIMER, J.**, dissenting.

Because I find that the language of La. C.C.P. art. 971 is clear and unambiguous, and its application does not lead to absurd consequences, I respectfully dissent.

The issue presented in this case is whether a defendant,[1] moving specially under La. C.C.P. art. 971 to strike a plaintiff's demand for defamation, arising out of a written statement made in a judicial proceeding, must additionally demonstrate that the statement concerned an issue of public significance. The majority answers this question in the affirmative. I disagree, believing the conclusion is supported neither by the plain language of the article, the rules of statutory construction, nor the expressed intent of the legislature.

*Plain Language*

As the majority acknowledges, the interpretation of a legislative enactment begins with the language of the statute itself. **Shelton v. Pavon**, 17-0482, slip op. at 4 (La. 10/18/17); **Duckworth v. Louisiana Farm Bureau Mutual Ins. Co.**, 11-2835, p. 12 (11/2/12), 125 So.3d 1057, 1064.

---

[1] Although, technically, this matter involves a plaintiff-in-reconvention and a defendant-in-reconvention, for simplification, we use plaintiff and defendant.

In this case, the language of La. C.C.P. art. 971 is strikingly clear. It encompasses the plaintiff's claim for defamation arising out of written statements made in a judicial proceeding without any separate "public issue" requirement.

Louisiana C.C.P. art. 971(A) makes subject to the special motion to strike "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue." For purposes of this provision, an "'[a]ct in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue,'" is defined to include "*[a]ny* written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law." La. C.C. P. art. 971 (F)(1)(a) (emphasis supplied). Thus, plainly read, La. C.C.P. art. 971 encompasses a cause of action against a person arising from *any* statement made in a judicial proceeding. I find there is nothing ambiguous about this language. Apart from noting there is a split among the courts of appeal as to the proper interpretation of the code article, no authority, legal or grammatical, is provided for the conclusion that the language of La. C.C.P. art. 971(F)(1)(a) is ambiguous. Quite the opposite: the finding of ambiguity results solely from the decision of some courts to insert qualifying language *not present* in La. C.C.P. art. 971(F)(1)(a)–the phrase "in connection with a public issue"–to otherwise clear and straightforward language.

Perhaps recognizing the thin thread upon which the finding of ambiguity rests, the conclusion reached in the opinion is that a literal reading of the codal provision "can lead to absurd results" because its application could extend beyond matters of "public significance" into purely private concerns. **Shelton**, slip op. at 8. However, the legislative response to this objection is found in the plain language of the

2

provision itself: pursuant to La. C.C.P. art. 971(F)(1) and (1)(a), *any* written or oral

statement or writing made before or in connection with a judicial proceeding is *by*

*definition* an "[a]ct in furtherance of a person's right of petition or free speech under

the United States or Louisiana Constitution *in connection with a public issue*."

(Emphasis added). As noted by Judge McDonald in his concurrence in **Aloise v.**

**Capital Mgmt. Consultants, Inc.**, 16-1174, p. 1 (La.App. 1 Cir. 4/12/17), <u>unpub'd.</u>,

and quoted by the majority:

> Article 971(F)(1)(a) and (b) statutorily define a protected act to include
> statements made before a judicial proceeding or in connection with an
> issue under consideration by a judicial body–that is, statements made
> during the course of litigation or in connection with an issue under
> consideration in litigation. So, it appears that the right to litigate is in
> itself a matter of public concern.

*Id.*, McDonald, J., concurring.

In other words, the language of La. C.C.P. art. 971(F)(1)(a) and (b), reflects a

clear choice by the legislature in these two provisions to define a "public issue" in

terms of setting or context rather than content. Thus, under La. C.C.P. art.

971(F)(1)(a), it is the setting–in this case, a judicial proceeding–that makes the issue

a public one. There is no additional requirement that the statement relate to an issue

of public significance.

This is, incidentally, consistent with, and reflects the legislature recognizing

the special protection that has been afforded statements made in the course of judicial

proceedings. That protection is embodied in the qualified privilege that exists in

Louisiana with respect to such speech.[2] It is also reflective of a legislative

---

[2] "Statements made in the course of a judicial proceeding are subject to a qualified privilege if the statements are material to the proceeding, and are made with probable cause and without malice." **Costello v. Hardy**, 03-1146, p. 16 n.13 (La. 1/21/04), 864 So.2d 129, 142 n.13 (citing **Freeman v. Cooper**, 414 So.2d 355 (La. 1982)).

recognition that any matter pending before the judiciary possesses some measure of "public significance" owing to the public nature of judicial proceedings.

Thus, a plain reading of the language of La. C.C.P. art. 971(F)(1)(a) demonstrates that the article does not limit its application to the content or context of statements made in the course of judicial proceedings, but applies to *any* statement.

*Rules of Statutory Construction*

My conclusion in this regard is buttressed by the rules of statutory construction. Louisiana C.C.P. art. 971(F)(1) lists four protected acts that are included within the definition of an "[a]ct in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue." In addition to the acts protected under La. C.C.P. art. 971(F)(1)(a) and (b), protection is extended under La. C.C.P. art. 971(F)(1)(c) and (d) to:

> (c) Any written or oral statement or writing made in a place open to the public or a public forum *in connection with an issue of public interest.*

> (d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech *in connection with a public issue or an issue of public interest.* [Emphasis added.]

Clauses (c) and (d) of La. C.C.P. art. 971(F)(1) include an express "issue of public interest" limitation that is not present in either clause (a) or (b).[3] Certainly, had the legislature intended the "issue of public interest" limitation to apply to clauses (a)

---

[3] La. C.C.P. art. 971(F)(1)(a) and (b) protect, by contrast:

> (a) Any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law.

> (b) Any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official body authorized by law.

4

and (b) of the article, the legislature knew how to include such a limitation. However, the legislature did not include such a limitation.

If the legislative intent, as expressed in 1999 La. Acts 734, § 2, was to impose a separate and additional "public issue" requirement to motions brought under all four clauses of La. C.C.P. art. 971(F)(1), then no purpose would be served by the legislature's specification in clauses (c) and (d) that the protected acts must be "in connection with an issue of public interest."

It is a cardinal rule of statutory interpretation that, because it is presumed every word, sentence, or provision in a law was intended to serve some useful purpose, some effect is to be given to each such provision, and no unnecessary words or provisions were employed by the legislature. See **Moss v. State**, 05-1963, p. 15 (La. 4/4/06), 925 So.2d 1185, 1196. Thus, courts are bound, if possible, to give effect to all parts of a law and to construe no sentence, clause or word as meaningless or surplusage if a construction giving force to, and preserving, all words can legitimately be found. See *Id.* A contrary interpretation in this case is at odds with this rule of statutory construction, as it renders the phrase "in connection with an issue of public interest" in La. C.C.P. art. 971(F)(1)(c) and (d) meaningless and mere surplusage. Believing that the legislature included the phrase in clauses (c) and (d) for some definite purpose, I cannot support an interpretation that would render that phrase meaningless when there is a reasonable interpretation of the language that would give it meaning. Nor do I believe that it is necessary or appropriate to embark on such a course in order to honor the legislative intent.

*Legislative Intent*

The Act that created La. C.C.P. art. 971 contains an express declaration of legislative intent. The pertinent provision in that statement of intent recites: "[I]t is

5

the intention of the legislature that the Article enacted pursuant to this Act shall be construed broadly." 1999 La. Acts 734, § 2. The interpretation offered in the majority opinion has the opposite effect, narrowing the application of the article by requiring proof of an additional element: that statements made in a judicial proceeding must be made in connection with a "public issue." However, as discussed above, there is no support for this narrow construction in the plain language of the article.

Nevertheless, the declaration is made that the broad construction directed by the legislature would produce an "absurd" result because "any party could defame or invade the privacy of a person involved in a divorce proceeding, traffic violation, child custody dispute, marriage, mortgage registration, passport application, or driver's licence renewal and be immunized from legal repercussions of damage to others through the use of an extraordinary procedural remedy." **Shelton**, slip op. at 8 (quoting **Yount v. Handshoe**, 14-0919, pp. 8-9 (La.App. 5 Cir. 5/28/15), 171 So.3d 381, 387, <u>writ denied</u>, 15-2302 (La. 2/19/16), 187 So.3d 462. With all due respect, I cannot agree with this declaration.

Louisiana C.C.P. art. 971 "was enacted as a procedural device to be used in the early stages of litigation to screen out meritless claims brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances." **Thinkstream, Inc. v. Rubin**, 06-1595, p. 9 (La.App. 1 Cir. 9/26/07), 971 So.2d 1092, 1100. Rather than immunize a person from the legal repercussions of statements defaming or invading the privacy of another, its application requires a two-part burden-shifting analysis: "the mover must first establish that the cause of action against him arises from an act ... in exercise of his right of petition or free speech ... in connection with a public issue. If this burden is

6

met, the burden then shifts to the plaintiff to demonstrate a probability of success on the claim." *Id.*

That the threshold showing of an act in furtherance of the right to petition or free speech in connection with a public issue, as defined in La. C.C.P. art. 971(F)(1)(a) and (b), encompasses a broad range of situations does not mean the application of clear and unambiguous language produces absurd consequences. Indeed, it is not absurd to conclude (as the legislature obviously did) that judicial proceedings, which are open to the public, present matters of public significance and are deserving of protection from efforts to chill the right to petition or free speech in connection therewith, or that it is appropriate, in light of the qualified privilege that exists with regard to statements made in judicial proceedings, to allow the protection that extends to such statements to be recognized at an early stage of the proceedings.

Parenthetically, it is worth noting that California was the first state to adopt an anti-SLAPP statute and the Louisiana and California statutes are "virtually identical." **Yount**, 14-0919 at 10 and n.4, 171 So.3d at 387 and n.4. ("Examination of the statutes shows that when adopted, the Louisiana and California statutes matched word for word with only the State name changed.") When the same question of statutory construction presented herein was raised in California, its supreme court concluded, in an opinion rendered prior to the enactment of La.C.C.P. art. 971, that "a defendant moving to strike a cause of action arising from a statement made before, or in connection with an issue under consideration by, a legally authorized official proceeding [the equivalent of La. C.C.P. art. 971(F)(1)(b)] need *not* separately demonstrate that the statement concerned an issue of public significance." **Briggs v**

7

**Eden Council for Hope & Opportunity**, 969 P.2d 564, 575 (Cal. 1999).[4] A similar interpretation of "virtually identical" language in the Louisiana article can hardly be said to produce absurd consequences.

In our civil law system, in which legislation is supreme, we must be careful not to prematurely declare a result absurd when there is a reasonable construction of the language that can avoid such a conclusion. Although La. C.C. art. 9 enables the judiciary to abandon statutory language in instances in which an absurd result would ensue from a literal application of the words, the judiciary should be hesitant to alter the legislative will by doing so.

In this case, the clear and unambiguous language of La. C.C.P. art. 971, the rules of statutory construction, and the declared legislative intent all support the conclusion that a defendant moving to strike a cause of action arising from a statement made in a judicial proceeding need *not* separately demonstrate that the statement concerned a public issue. Therefore, I respectfully dissent from the opinion to the contrary.[5]

---

[4] But see, e.g., **Felis v. Downs Rachlin Martin PLLC**, 133 A.3d 836, 851-54 (Vt. 2015), in which the Vermont Supreme Court declined to follow **Briggs** and reached a different conclusion with respect to the statutory analysis.

[5] While ordinarily a finding that the defendant met his initial burden of demonstrating that the cause of action against him arises from an act in exercise of his right of petition or free speech in connection with a public issue would require an evaluation of the affidavits submitted by the plaintiff to determine whether those affidavits demonstrate a probability of success on the merits, because of the majority's resolution of this case on grounds that defendant did not meet his initial burden under La.C.C.P. art. 971, and my dissent from that conclusion, I find it unnecessary to evaluate the affidavits for purposes of this dissent.

10/18/17

SUPREME COURT OF LOUISIANA

No. 2017-CC-0482

PHILIP SHELTON

VERSUS

NANCY PAVON

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL
FOURTH CIRCUIT, PARISH OF ORLEANS

CLARK, Justice, dissenting

I dissent for the reasons given by Justice Weimer.

**SUPREME COURT OF LOUISIANA**

**No. 2017-CC-0482**

**PHILIP SHELTON**

**V.**

**NANCY PAVON**

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FOURTH CIRCUIT, PARISH OF ORLEANS**

**Hughes, J., dissents with reasons.**

I respectfully dissent and would reinstate the judgment of the trial court, who in my opinion handled this matter exactly right. The Legislature was very specific in writing the law and in my opinion addresses this situation perfectly. The law allows the weeding out of frivolous claims or those interposed to delay or intimidate, and does not lead to absurd consequences.

SUPREME COURT OF LOUISIANA

No. 2017-CC-0482

PHILIP SHELTON

VERSUS

NANCY PAVON

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FOURTH CIRCUIT, PARISH OF ORLEANS

**CRICHTON, J., additionally concurs and assigns reasons.**

I agree with the majority's interpretation of La. C.C.P. article 971. I write separately to make clear that, in my view, this outcome is consistent with the intent of the legislature to make this procedure an extraordinary remedy. *See* La. C.C.P. art. 971 Ann., Acts 1999, No. 734, § 2 ("The legislature finds and declares that it is in the public interest to encourage continued participation *in matters of public significance*, and that this participation should not be chilled through abuse of the judicial process.") (emphasis added). In the event the legislature intended otherwise, it may of course amend the article to make clear that any pleading before a judicial proceeding is, by definition, a "public issue" pursuant to C.C.P. art. 971(F)(a).